**UNITED STATES of America,
Appellee,**

v.

**Robert L. CARDILLO, Appellant.**

**No. 71–2015.**

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 13, 1972.

Decided Feb. 5, 1973.

Fred Warren Bennett, Washington, D. C., Court-appointed counsel, for appellant.

Russell T. Baker, Asst. U. S., Atty. (George Beall, U. S. Atty., on brief), for appellee.

Before SOBELOFF, Senior Circuit Judge, and WINTER and BUTZNER, Circuit Judges.

PER CURIAM:

Robert L. Cardillo appeals from his conviction for bail jumping in violation of 18 U.S.C.A. § 3150 (1969). We affirm.

I.

On May 28, 1970, Cardillo pleaded not guilty to a charge of interstate transportation of stolen securities. He was released on $15,000 bond. Following the court's regular procedure, the courtroom clerk, in the presence of the judge, reviewed the bail conditions with Cardillo. The clerk warned him that if he violated any condition of his release or failed to appear when ordered by the court, he could be prosecuted on separate bail-jumping charges carrying a maximum penalty of five years' imprisonment and a $5,000 fine. Cardillo signed a document acknowledging these conditions.[1]

On January 7, 1971, before the trial in the stolen securities case began, the government filed a motion to modify the conditions of Cardillo's bond. On the same day, the clerk's office sent Cardillo a notice informing him that a hearing on this motion had been scheduled for January 13, 1971. The United States Attorney's office also sent copies of this notice to Cardillo and his counsel. Cardillo admits to both receipt of the notice and knowledge that he was expected to appear in court on January 13. Nevertheless, Cardillo chose not to appear, apparently because he feared that his bail would be revoked due to his bondsman's unwillingness to accept any modification of the bond. Cardillo "skipped" town, traveling to Boston and later New York, where he surrendered to the FBI on March 24. At trial, Cardillo explained that he "skipped" town in order to punish the bonding company for its refusal to agree to any modification of the bond, never aware that his failure to appear could result in criminal sanctions in addition to forfeiture of the bond.

II.

Cardillo submits that since the courtroom clerk rather than the judge advised him of the penalties for failing to appear, he cannot be prosecuted for violating the bail-jumping statute, § 3150. Cardillo relies on 18 U.S.C.A. § 3146(c) (1969), which requires that "[a] judicial officer authorizing the release of a person under this section * * * shall inform such person of the penalties applicable to violation of the conditions of his release * * *." Cardillo contends that his motion for a directed verdict of acquittal should have been granted because the courtroom

---

1. " * * * I also understand that if I fail to appear before this Court as required, an additional criminal case may be instituted against me by the United States Attorney, and that I may receive a fine of not more than $5,000.00 and/or be imprisoned for not more than five years."

clerk is not a "judicial officer." We are not persuaded.

■ The legislative history of § 3146(c) demonstrates that the required warning by a "judicial officer" is not a condition precedent to prosecution under § 3150. The requirement of § 3146(c) that a judicial officer inform the defendant of applicable penalties was "designed not as a prerequisite to subsequent prosecution, but in order to enhance its deterrent value of increased emphasis on criminal penalties * * *."[2] *See* United States v. De-Pugh, 434 F.2d 548, 552–553 (8 Cir. 1970), cert. denied, 401 U.S. 978, 91 S. Ct. 1208, 28 L.Ed.2d 328 (1971). The clerk delivered the § 3146(c) warning to Cardillo in the presence of the judge. Cardillo signed a document acknowledging it. In these circumstances, the clerk acted under the guidance of and as the agent for the presiding judge.[3] There is no doubt that the procedure used in the District Court was sufficient to put Cardillo on notice of the penalties that might be imposed if he failed to appear in court as directed.

### III.

■ Section 3150 makes it a crime for a defendant who has been released pursuant to the Bail Reform Act of 1966, 18 U.S.C.A. ch. 207, willfully to fail to appear before any court as required. Cardillo's bond order did not recite the authority under which he was released, and the government did not prove at trial that he was released pursuant to the Bail Reform Act rather than Rule 46 of the Federal Rules of Criminal Procedure. Cardillo claims that since § 3150 applies only to persons released pursuant to the Bail Re-

form Act, the government's failure to establish that he was released under this Act mandates reversal.

■ The Fifth Circuit rejected an identical claim in United States v. Luis, 418 F.2d 439 (1969). Rule 7(c) of the Federal Rules of Criminal Procedure provides that an error or omission in the citation of a statute in an indictment is not grounds for reversal "if the error or omission did not mislead the defendant to his prejudice." Cardillo was well aware that he was on trial for willful failure to appear at the bail modification hearing. Additionally, as the Fifth Circuit correctly observed, since Rule 46 is substantially a restatement of the Bail Reform Act, the government need not establish the provision under which a defendant was released. *Luis, supra* at 438–439. *See* Notes of Advisory Committee on the Federal Rules of Criminal Procedure, comment on Rule 46.

### IV.

■ Cardillo's bond recited as one of its conditions that he must appear before the court and at such other places and times as the court or the United States Commissioner might order. The notice Cardillo received did not explicitly order his presence at the bond modification hearing, although it did advise him of the hearing. Cardillo argues that since he received no explicit order to appear, it is of no consequence that he believed he was obliged to appear and willfully absented himself.

In the circumstances of this case, we cannot accept this contention. The United States Attorney arranged the hearing date with Cardillo's counsel. It was understood that Cardillo was ex-

---

2. Testimony of Deputy Attorney General Ramsey Clark. Hearings on S. 1357, S. 646, S. 647, S. 648 Before the Subcomm. on Constitutional Rights and the Subcomm. on Improvement in Judicial Machinery of the Senate Comm. on the Judiciary, 89th Cong., 1st Sess. 23–24 (1965).

3. Unlike Rule 11 of the Federal Rules of Criminal Procedure, § 3146(c) does not require that the judicial officer "personally" inform a defendant of the penalties. Rule 11 expressly states that "[t]he court * * * shall not accept [a guilty] plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily * * *."

pected to attend. Cardillo was advised that his presence was expected and he believed it to be required. A notice of the hearing bearing the court's name and signed by the clerk of court was sent to Cardillo. This notice may be understood as a court direction to appear, and Cardillo admittedly drew this meaning from it. Under these circumstances, although the notice did not explicitly order Cardillo to appear or notify him that his presence was required, it is patent that Cardillo willfully failed to make a court appearance, thereby transgressing the essence of § 3150. It would, however, be better practice in the future for the notice to include an unequivocal statement that the defendant's presence at a particular hearing is required. This would obviate the possibility that under different circumstances a defendant might truly be unaware that his attendance at a hearing was required.

We see no merit in Cardillo's other contentions and conclude that they do not warrant discussion.

Affirmed.