UNITED STATES of America, Plaintiff,

v.

Frank D. STANLEY, Defendant.

No. CR–76–106–CBR.

United States District Court,
N. D. California.

April 20, 1978.

G. William Hunter, U. S. Atty., D. Michael Nerney, Asst. U. S. Atty., San Francisco, Cal., for plaintiff.

William Pinkus, Santa Rosa, Cal., Michael E. Tigar, Tigar & Buffone, Washington, D. C., for defendant.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

On April 1, 1977, after being found guilty by the Court of importation of marihuana, 21 U.S.C. § 952(a), possession of marihuana with intent to distribute, 21 U.S.C. § 841(a)(1), conspiracy to import marihuana, 21 U.S.C. § 963, and conspiracy to possess marihuana with intent to distribute, 21 U.S.C. § 846, defendant Frank D. Stanley was sentenced to the custody of the Attorney General for four years with a special parole term of three years on each count, to run concurrently. At the same time, defendant was granted bail pending appeal on the same terms and conditions in effect prior to trial. Prior to trial, defendant was released on an appearance bond in the amount of $25,000. A $2,500 deposit was paid, and defendant's wife, Shirley Stanley, was named as a surety. Among the conditions of the bond was a travel restriction to the effect that defendant was not to depart

this District without court permission. Defendant's conviction was affirmed on appeal, and he is currently awaiting the disposition of a petition for certiorari in the Supreme Court of the United States. He remained on bail until April 1, 1978, when he was arrested on order of this Court. After a hearing conducted April 17, 1978, the Court ordered defendant's bail forfeited and defendant remanded to the custody of the Attorney General to begin serving his sentence. Pursuant to Rule 9(b) of the Federal Rules of Appellate Procedure, the Court hereby states in writing the reasons for the actions taken.

On March 31, 1978, the Court granted an ex parte motion to revoke bail brought by the United States on the basis of the affidavit of Special Agent Thomas F. Siegel. The affidavit stated that defendant had recently been identified as "Harold W. Carmichael", one of the individuals detained for suspicion of smuggling on July 20, 1977, aboard the Jeannie S II at Booth Bay, Maine. According to the affidavit, the boat had been purchased for cash by Alan Henry Culbert, Mr. Stanley's co-defendant in this matter, who had fled the jurisdiction and avoided apprehension until that time. Moreover the boat was being operated at night with no running lights, returning to the same point in the open sea as if practicing for a rendezvous. Two other individuals detained were identified as associated with the incident at Bodega Bay, California, which forms the basis for defendant's conviction. Ground arrangements for rental trucks and CB radios were also similar to the Bodega Bay incident. When detained, defendant had in his possession a fraudulent Social Security card in the name of Harold W. Carmichael. He had neither sought nor obtained permission from the Court or the Probation Department to travel to Maine.

■ Upon revocation of defendant's bail, an arrest warrant was issued. Defendant was arrested April 1, 1978. On April 5, the Court conducted a hearing on the bail revocation, at which defendant's principal contention was that the revocation was im-

proper because it was not authorized by any specific provision of the Bail Reform Act of 1966, 18 U.S.C. §§ 3141–3152. The matter was taken under submission. Review of defendant's authorities showed, however, that the Bail Reform Act was never intended to supplant remedies available pursuant to Rule 46 of the Federal Rules of Criminal Procedure or the inherent power of the Court to enforce its own orders. *E. g., United States v. Clark,* 412 F.2d 885, 890 (5th Cir. 1969); *Brown v. United States,* 410 F.2d 212, 216–218 (5 Cir. 1969); *United States v. Fogel,* 395 F.2d 291, 293–294 (4 Cir. 1968); *see United States v. Erwing,* 268 F.Supp. 877 (N.D.Cal.1967) (revocation of bail pending appeal); *United States v. Baca,* 444 F.2d 1292, 1296–1297 (10 Cir.), *cert. denied,* 404 U.S. 979, 92 S.Ct. 347, 30 L.Ed.2d 294 (1971) (same). Accordingly, a brief further hearing was conducted April 6, 1978, at which time the matter was set down for a fact-finding hearing on the issues of breach of condition, setting aside or remitting any forfeiture, and the conditions of any new bail to be set. Based on the facts set forth in Agent Siegel's affidavit and the history of this case, the Court ordered that defendant remain in custody pending final resolution of these issues.

■ The factual hearing was conducted April 17, 1978. Defendant's initial contention was again that his incarceration was unauthorized, this time on the ground that the 1972 amendments to Rule 46 of the Federal Rules of Criminal Procedure abolished all inherent power of the Court relating to bail. This contention must be rejected. Defendant relies principally on the elimination from former Rule 46(a)(2) of language which provided that a court authorized to grant bail pending appeal "may at any time revoke the order admitting the defendant to bail." However, former Rule 46(a)(2) dealt only with release pending appeal. There was no similar language in former Rule 46(a)(1), dealing with pretrial release. Yet the law is clear that a court had power to revoke pretrial bail notwithstanding the absence of any specific authorizing provision in the rule, and that neither

the letter nor the spirit of the Bail Reform Act eliminated that inherent power. *United States v. Clark, supra,* 412 F.2d at 890; *United States v. Fogel, supra,* 395 F.2d at 293–294. Defendant has not suggested any reason to distinguish the Court's power over pretrial and postconviction bail on this point, and the conclusion is inescapable that Rule 46(a)(2) merely embodied the Court's preexisting inherent power to enforce its own orders by revoking bail upon the violation of a condition of release. At least one court of this District has exercised its power to revoke bail pending appeal after the Bail Reform Act. *United States v. Erwing, supra,* 268 F.Supp. 877. And the Court of Appeals for the Ninth Circuit has recognized the continuing existence of this inherent power even after the 1972 amendments. *United States v. Brizuela,* 508 F.2d 386, 387–388 (9 Cir. 1974); *see also United States v. Brown,* 399 F.Supp. 631, 632 (W.D. Okl.1975). Defendant's contrary contention is supported neither by the language nor by the policy of the 1972 amendments.

With the exception of certain specific additions to cover matters not previously addressed, those amendments were intended primarily to bring the rule into conformity with the Bail Reform Act. Advisory Committee Note to 1972 Amendments, Fed.R. Crim.P. 46. Yet the language of the Bail Reform Act itself suggests that Congress recognized the continuing existence of inherent power to revoke bail and arrest a defendant. 18 U.S.C. § 3146(c) requires a judicial officer authorizing release on pretrial bail to inform the defendant that an arrest warrant will be issued immediately upon violation of any condition of release. This section does not itself authorize bail revocation or arrest. But it clearly contemplates that such action may be taken upon violation of a condition of release. Congress can only have had in mind the Court's inherent power, which is thus implicitly endorsed by § 3146(c).

More specifically, the principal change wrought by the 1972 amendments in Rule 46(a)(1) and (2) was to substitute a reference to 18 U.S.C. §§ 3146, 3148, and 3149 for the conditions formerly specified in the rule. Rules 46(a) and (c). Since courts had already expressly held that the Bail Reform Act did not eliminate a court's inherent power to revoke pretrial bail on a proper showing, the mere reference to the Bail Reform Act could not have eliminated the Court's power to revoke pretrial bail. And there is absolutely no reason to believe that these essentially formal changes were intended to create a sharp new distinction between pretrial bail and bail pending appeal—a distinction plainly not required by the Bail Reform Act. Accordingly, the elimination of the specific language authorizing revocation of bail pending appeal from Rule 46 provides no support for defendant's contention.

Defendant's reliance on the 1972 amendments' addition of language to Rule 46(c) authorizing bail pending notice of appeal or expiration of the time allowed for filing such notice is equally unpersuasive. The mere fact that language was added which specifically addressed one situation previously thought to have been governed by the inherent power of the Court is no evidence of a general intent to abolish the Court's broadly applicable inherent power over bail. There is simply no evidence that the amendments were intended to work any such result.

■ For the reasons given, the Court concluded at the hearing that the order of March 31, 1978, was within its power. The arrest and incarceration of Mr. Stanley pending a full factual hearing was authorized by the inherent power of the Court and properly ordered upon the showing made by the Government that he had violated a condition of his bond in circumstances suggesting a resumption of illegal activity. At the conclusion of the legal arguments, the parties were provided the opportunity to present further evidence addressed to three separate questions. The first was whether defendant had violated a condition of the bond, triggering the mandatory declaration of bail forfeiture required by Rule 46(e)(1) of the Federal Rules of Criminal Procedure. Although defendant did not expressly ad-

mit that he had travelled to Maine, that conclusion is supported both by the affidavit of Agent Siegel and the affidavit of Robert J. Cabanass, submitted by defendant on his own behalf. There is no evidence that permission was granted. Accordingly, the Court found that defendant had violated the travel condition of his bond and declared a forfeiture of his $25,000 bail.

■ Second, defendant moved to remit the forfeiture, or more properly designated, to set aside the forfeiture pursuant to Rule 46(e)(2). On this point, the circumstances of the violation are crucial. The evidence submitted by defendant in opposition to Agent Siegel's affidavit was as follows: (1) a brief affidavit from Mr. Cabanass, who is not identified except by name, stating that on July 20, 1977, in Maine, a man identifying himself as a Drug Enforcement Administration agent said to defendant, "you can go now Mr. Stanley"; and (2) two statements made on cross-examination of Agent Siegel. First, Agent Siegel stated that agents in Maine had informed him that one of those apprehended July 20th met the general physical description of Mr. Stanley. Second, Agent Siegel stated that the Special Agent in Charge in Maine had told him that some of the items seized were the fruits of an unauthorized, unwarranted, and unconsented to search. After weighing the evidence on both sides, the Court found that although the agents may have suspected in July that Carmichael was Stanley, he was first identified on March 15, 1978. Thus, there was no evidence of laches on the part of the Government or of any failure by the Government to view defendant's conduct as a serious violation of the bond. Moreover, the Court found no factual basis for the conclusion that the evidence against defendant was seized in an illegal search, or that the Government was using the bail forfeiture proceeding to accomplish indirectly what it could not do directly, that is, the incarceration of Mr. Stanley for his acts in Maine in July, 1977.

There was no evidence before the Court contradicting any of the other facts set forth in Agent Siegel's affidavit. Accordingly, the Court found that the facts set forth in the affidavit are true and correct. In particular, the Court found that while in Maine in violation of a condition of his bond, defendant was detained aboard the Jeannie S II, a vessel purchased for $30,000 cash by Alan H. Culbert, his co-defendant in this case then known to him to be a fugitive, and that when detained, defendant was carrying false identification. Defendant offered no facts in explanation or mitigation of this violation or any of the surrounding circumstances, and the Court could only find that it was a deliberate and willful breach of the condition without mitigating circumstances. In these circumstances, justice requires the enforcement of the forfeiture. Consequently, defendant's motion was denied.

■ Defendant's bail having been forfeited, the only remaining question was whether new bail should be set and, if so, in what amount and under what conditions. Although no case, statute, or rule specifically covers this situation, both parties agreed and the Court found that defendant was in the position of moving anew for bail pending appeal pursuant to Rule 9(b) and (c) of the Federal Rules of Appellate Procedure, Rule 46(c) of the Federal Rules of Criminal Procedure, and 18 U.S.C. § 3148. Thus, the burden of establishing that defendant would not flee or pose a danger to the community rested with defendant.

On the questions posed by § 3148, the Court found that defendant's petition for certiorari is a substantial one, and that the risk of flight is not sufficient to justify a denial of bail. However, the circumstances of defendant's detention in Maine suggest a resumption of criminal activity. Upon the Government's representation that it had evidence of further criminal activity which could not be revealed without jeopardizing its ongoing investigation of a large smuggling operation, the Court conducted an in camera hearing outside the presence of defense counsel, at which sworn testimony was received and transcribed, the transcript to be maintained under seal. After the hearing, the Court found that there was

probable cause to believe that defendant had resumed activities of the same type for which he was convicted in this case, that he had continued to engage in a large scale narcotics smuggling operation, and that he had violated 21 U.S.C. §§ 841(a), 846, 952(a) and 963 between the date of judgment and the date of the hearing. The Court further found that the substantial evidence on which this finding was based could not be revealed without seriously impairing an ongoing investigation.

■ Continued drug trafficking may pose a sufficient danger to the community to require a revocation of bail pending appeal. *United States v. Erwing,* 280 F.Supp. 814 (N.D.Cal.1968); *United States v. Erwing, supra,* 268 F.Supp. 877. Of course, different considerations apply when the drug in question is marihuana rather than heroin. The dangers in this case are not so much the social hazards associated with addictive drugs, as the tremendous dangers associated with any massive smuggling operation. Shipments involving many tons of contraband worth many millions of dollars pose a tremendous danger to society even if the contraband itself is believed to be harmless. The nature of the people involved in this case and the potential dangers if smuggling is allowed to continue are suggested by the attempt on Mr. Stanley's life at an earlier stage of these proceedings. In similar circumstances, bail pending appeal has been denied on the basis of danger to the community where the contraband was a multi-ton shipment of marihuana. *United States v. Miranda,* 442 F.Supp. 786, 792–795 (S.D.Fla.1977); *see also United States v. Sutton,* 322 F.Supp. 1320 (S.D.Cal.1971) (alternate ground). In this case, the Court found substantial danger to the community in defendant's continued participation in the massive smuggling operation documented in the Government's evidence. Defendant has presented no evidence to support his counsel's contention that all such participation has now ceased. Counsel represented that Stanley had neither left California nor engaged in illegal activities since July 20, 1977. But they presented no witnesses, affidavits, or other facts to that effect. In-

deed, they presented no witnesses to testify to defendant's activities or whereabouts at any time since the judgment. And they failed to suggest any reason why the forces leading to his participation in July, 1977—whether simple greed and disrespect for the law or pressures from his associates in this matter—would not affect him with equal force in the future. Accordingly, defendant did not carry his burden of showing that he will not pose a danger to the community if released.

■ Bail should not be denied on grounds of dangerousness unless the only way to protect against the danger is to incarcerate the defendant. *Chambers v. Mississippi,* 405 U.S. 1205, 1206, 92 S.Ct. 754, 30 L.Ed.2d 773 (1972) (Powell, J., in chambers); *Sellers v. United States,* 89 S.Ct. 36, 38, 21 L.Ed.2d 64, 67 (1968) (Black, J., in chambers). But the burden of showing that there exist conditions of release which will reasonably assure defendant's nondangerousness is part of the defendant's burden of demonstrating nondangerousness generally. In this case, defendant failed to meet that burden. He suggested daily telephonic contact with the Santa Barbara Probation Office and personal contact with the San Luis Obispo Office every other day. The Probation Department has agreed to perform this service if so ordered. However, they do not represent that such contacts would prevent further criminal activity. The criminal activity here involves a conspiracy requiring many different services from its participants, all operating at a low level of visibility, and apparently taking place on both the east and west coasts of the United States. The only way to prevent further participation in a crime of this nature is continuous surveillance, which is not a possibility here.

Based on the foregoing findings, the Court concluded that defendant Stanley is not eligible for bail pending appeal pursuant to 18 U.S.C. § 3148. His previous bail having been forfeited, he was remanded to the custody of the Attorney General at the conclusion of the April 17, 1978, hearing to begin serving his sentence.