**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Jo Ann WILLIAMS, Defendant-Appellee.**

No. 78–1725.

United States Court of Appeals,
Fifth Circuit.

April 30, 1979.

Rehearing En Banc Granted
July 2, 1979.

William L. Harper, U. S. Atty., C. Michael Abbott, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellant.

John A. West, Cincinnati, Ohio, Jo Ann Williams, pro se, for defendant-appellee.

Before GOLDBERG, SIMPSON and CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

Defendant-Appellee Jo Ann Williams was indicted, in a two-count indictment, for possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1976). At trial the district court, prior to placing the defendant in jeopardy, granted defendant's motion to suppress evidence of two packets of heroin seized by Drug Enforcement Administration ("DEA") Special Agent Paul J. Markonni. Pursuant to 18 U.S.C. § 3731 (1976) [1] the United States appeals from the

1. Section 3731 provides in pertinent part:

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal

district court's order granting defendant's motion to suppress. We affirm.

## I

In June of 1976, Special Agent Markonni arrested defendant in Toledo, Ohio, for possession of federally controlled narcotics. Thereafter, in March of 1977, defendant pleaded guilty in the United States District Court, Northern District of Ohio, to possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1).[2] Pending her appeal to the United States Court of Appeals for the Sixth Circuit, defendant was released on bond.[3] As a condition of her bond, she was restricted in travel to the State of Ohio.[4]

On September 28, 1977, Special Agent Markonni was on duty at Atlanta International Airport. At 7:20 P.M. he observed defendant deplane from a non-stop Delta Airlines flight originating in Los Angeles, California. Agent Markonni was present at this particular location as part of the DEA's Drug Courier Interdiction Program: flights arriving from Los Angeles were monitored because that city had been identified as a source of illegal drugs carried by drug couriers.[5]

is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding.
18 U.S.C. § 3731 (1976).

2. Section 841(a)(1) provides:
(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance
. . ..
21 U.S.C. § 841(a)(1) (1976). Heroin is a Schedule I controlled substance. 21 U.S.C. § 812(c) (1976).

3. Defendant was released on bond pending appeal in accordance with 18 U.S.C. § 3146 (1976), as required by 18 U.S.C. § 3148 (1976) which provides in pertinent part:
§ 3148. Release in capital cases or after conviction
A person . . . (2) who has been convicted of an offense and . . . has filed an appeal . . . shall be treated in accordance with the provisions of section 3146 unless the court or judge has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community.

4. Imposition of travel restrictions as a condition of release pending appeal is authorized by 18 U.S.C. § 3146(a)(2) (1976), which provides in pertinent part:
§ 3146. Release in noncapital cases prior to trial
(a) Any person charged with an offense, other than an offense punishable by death, shall, at his appearance before a judicial officer, be ordered released pending trial on his personal recognizance or upon the execution of an unsecured appearance bond in an amount specified by the judicial officer, unless the officer determines, in the exercise of his discretion, that such a release will not reasonably assure the appearance of the person as required. When such a determination is made, the judicial officer shall, either in lieu of or in addition to the above methods of release, impose the first of the following conditions of release which will reasonably assure the appearance of the person for trial or, if no single condition gives that assurance, any combination of the following conditions:
*     *     *     *     *     *
(2) place restrictions on the travel, association, or place of abode of the person during the period of release. . . .

5. DEA's Drug Courier Interdiction Program involves detention and searches of passengers deplaning in or passing through selected airports because these passengers manifested certain characteristics associated with "mules" (drug couriers). The seven principal characteristics consist of: (1) arrival from or departure to an identified source city; (2) carrying little or no luggage, or large quantities of empty suitcases; (3) unusual itinerary, such as rapid turnaround time for a very lengthy airplane trip; (4) use of an alias; (5) carrying unusually large amounts of currency in many thousands of dollars, usually on the person, in briefcases or bags; (6) purchasing airline tickets with a large amount of small denomination currency; and (7) unusual nervousness beyond that ordinarily exhibited by passengers. Secondary characteristics consist of: (1) the almost exclusive use of public transportation, particularly taxicabs, in departing from the airport; (2) immediately making a telephone call after deplaning; (3) leaving a false or fictitious callback telephone number with the airline being utilized; and (4) excessively frequent travel to source distribution cities.
It should be noted that none of these eleven characteristics constitute illegal acts, nor are they necessarily inconsistent with conduct of persons not engaged in illegal drug trafficking.

Agent Markonni closely observed defendant, recognizing her as the Jo Ann Williams he had arrested previously and the individual convicted, upon a guilty plea, of possession of a controlled substance with intent to distribute. He observed defendant walk from one airport concourse to another, look at a departing flight monitor screen, and turn down the concourse apparently to catch a departing flight. At this point Agent Markonni approached defendant, identified himself, and requested her to produce identification. Defendant produced the same Michigan driver's license she had produced in June of 1976 when first arrested by Agent Markonni. Defendant also produced her airline tickets upon Agent Markonni's request. These airline tickets indicated that defendant was traveling from Los Angeles, California to Lexington, Kentucky, with a connecting flight in Atlanta. Two baggage claim ticket stubs were attached to the airline ticket.

Markonni, aware of the travel restrictions imposed upon defendant under her appeal bond,[6] asked defendant whether she had permission to be outside her bond restricted area, the State of Ohio. Defendant's response was, "No, this is the first time." Markonni then asked defendant why she was going to Lexington, to which she responded, "I live there now."

Markonni then proceeded to arrest defendant for "bail jumping" because: (1) she admitted to being outside her bond restricted area without permission; (2) she was en route to Lexington, Kentucky rather than any location in the state of Ohio; and (3) she was preparing to board another airplane, which would have taken defendant

out of Agent Markonni's observation and ability to continue surveillance. Although Agent Markonni had learned from defendant that she was outside her bond restricted area without the permission of the authorities, the record is clear that he had absolutely no knowledge of any outstanding arrest warrant for defendant, or that defendant was scheduled to make any court appearance or appear before any judicial officer, or had failed to do so previously. In fact, no such appearance was scheduled.

After placing defendant under arrest for "bail jumping", Agent Markonni took defendant to the airport police office where she was searched by two female security guards. A packet was discovered in defendant's coat pocket. A field test of the contents of this packet produced a positive reaction for presence of an opiate. Defendant was then arrested for violations of the Federal Controlled Substances Act.

Agent Markonni then took the baggage claim ticket stubs from defendant and requested Delta Airlines to remove this luggage. After the luggage was retrieved and brought to the airport police office, Markonni asked defendant for consent to search the luggage and advised her of her right to refuse. Defendant asked and received permission to telephone her attorney. After doing so, defendant refused to consent to the search. Both pieces of luggage were retained overnight. The following morning, September 29, 1977, Agent Markonni filed an affidavit for a search warrant before a United States Magistrate. The magistrate, based upon the representations in the affidavit,[7] issued a warrant authorizing

---

**6.** Agent Markonni was apprised of the travel restriction under the appeal bond by an assistant United States Attorney for the Northern District of Ohio during a conversation following defendant's March 1977 conviction.

**7.** Agent Markonni's affidavit recited the following facts as grounds for issuance of the warrant:

On 6–19–76 affiant arrested JoAnn WILLIAMS at Toledo, Ohio, and found and seized 372.82 grams net weight of heroin and 29.51 grams net weight of cocaine in her handbag which was in her possession. WILLIAMS was with Clarence WEBB, her common-law husband who is a reputed narcotic trafficker, and

both WILLIAMS and WEBB are reputed couriers for a large scale narcotic distribution organization in the Cincinnati, Ohio area. Subsequent to his arrest with WILLIAMS, WEBB admitted to affiant that the heroin and cocaine were furnished to him by Mico Rachelle ROGERS, a reputed narcotic dealer from Los Angeles, CA who had been arrested on a date previous to 6–19–76 at Detroit Metropolitan Airport in possession of a large amount of heroin.
On 3–4–77 WILLIAMS and WEBB were convicted by plea of guilty to violation of Title 21, U.S.C. § 841(a)(1), possession with intent to distribute heroin and on 5–6–77 WILLIAMS was sentenced in U. S. District Court, Toledo, Ohio, to the custody of the Attorney General

a search of defendant's luggage. The search uncovered a large quantity of suspected heroin. Markonni's field test produced another positive reaction indicating the presence of an opiate. Both quantities of the suspected heroin were sent to the DEA Laboratory in Miami, Florida, where analysis established that the material seized was heroin.

On November 11, 1977, defendant was indicted, in a two-count indictment, for possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (1976). The heroin seized formed the basis for the indictment.[8]

Defendant made a timely motion to suppress all evidence seized by government authorities. After a hearing upon this motion, a United States Magistrate recommended that the motion be denied: the magistrate concluded that Agent Markonni's arrest of defendant for "bail jumping" was lawful because based upon probable cause [9] even though he had no knowledge of any scheduled court appearance defendant failed to attend. Because the warrantless arrest was lawful, the magistrate then concluded that the search incident thereto was lawful. Consequently, the first packet of heroin seized was not suppressible. This evidence, in turn, provided probable cause

for the issuance of a search warrant for defendant's luggage. Hence, the second search was lawful.

After hearing extensive oral argument from counsel, the district court disagreed with the magistrate's recommendation, sustaining defendant's motion to suppress all the evidence seized.

II

■ The government's position on this appeal is that Agent Markonni's warrantless arrest was authorized by 21 U.S.C. § 878(3) (1976) which provides:

> Any officer or employee of the Bureau of Narcotics and Dangerous Drug designated by the Attorney General may—
>
> (3) make arrests without warrant (A) for any offense against the United States committed in his presence, or (B) for any felony, cognizable under the laws of the United States, if he has probable cause to believe that the person to be arrested has committed or is committing a felony . . . .

Two theories are offered. First, the government maintains that Agent Markonni had probable cause to arrest defendant for "bail jumping" as proscribed by 18 U.S.C. § 3150 (1976). Alternatively, the government claims that there was probable

---

for a period of three years. WILLIAMS appealed her conviction and is on an appeal bond from the Northern District of Ohio.

On 9–28–77, at approximately 7:20 P.M., affiant observed WILLIAMS deplane from Nonstop Delta Airlines flight 1020 from Los Angeles, California, the source city of heroin related to her conviction. Affiant, aware of the above facts and circumstances, interviewed WILLIAMS, during which affiant observed that her airline ticket was for travel from Los Angeles to Lexington, Kentucky, via Atlanta. Affiant knew that all three of the above cities were outside of the area to which WILLIAMS was restricted by her appeal bond. Affiant asked WILLIAMS if she had court permission to leave her area of restriction to which she responded, "no—this is the first time." Affiant asked WILLIAMS why she was traveling to Lexington, Kentucky, to which she responded, "I'm living there now."

Affiant subsequently arrested WILLIAMS and during a search incident to her arrest a quantity of suspected heroin was seized from her jacket pocket. The suspected heroin, found by a female officer, was released to the affiant who observed a field test of the sub-

stance conducted by Special Agent Michael L. Dorsett. A positive reaction for the presence of an opiate was observed.

Using luggage claim check numbers obtained from WILLIAMS' ticket envelope, affiant obtained the above-described pieces of luggage. WILLIAMS was asked by affiant to consent to a search of the above-described pieces of luggage, and after telephonically consulting with her attorney, she refused to consent to that search.

Government Exhibit 4.

8. Count One of the indictment was based upon the packet of heroin discovered in defendant's jacket pocket as a result of the search incident to the warrantless arrest for "bail jumping". Count Two was based on the heroin discovered in defendant's luggage which was searched pursuant to the search warrant issued by the magistrate.

9. With regard to probable cause, the magistrate found that "[t]he test . . . is whether or not Markonni had probable cause to believe that Williams was jumping bond, not whether she could be successfully prosecuted therefor". Record, Vol. 1, at 40.

cause to arrest defendant for "bail jumping" under 18 U.S.C. § 3146 (1976), *or* 18 U.S.C. § 401(3) (1976), *or* a combination thereof, because she violated the travel restriction condition of her bond.[10]

## A. *SECTION 3150—WILLFUL FAILURE TO APPEAR*

The only criminal penalties provided for in the Bail Reform Act of 1966[11] are found in 18 U.S.C. § 3150 (1976).

> **§ 3150. Penalties for failure to appear**
>
> Whoever, having been released pursuant to this chapter, *willfully fails to appear before any court or judicial officer as required,* shall, subject to the provisions of the Federal Rules of Criminal Procedure, incur a forfeiture of any security which was given or pledged for his release, and, in addition, shall, (1) if he was released in connection with a charge of felony, or while awaiting sentence or pending appeal or certiorari after conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both, or (2) if he was released in connection with a charge of misdemeanor, be fined not more than the maximum provided for such misdemeanor or imprisoned for not more than one year, or both, or (3) if he was released for appearance as a material witness, shall be fined not more than $1,000 or imprisoned for not more than one year, or both.

18 U.S.C. § 3150 (1976) (emphasis added).

■ The essence of the crime of "bail jumping", proscribed under section 3150, is the *willful failure to appear before any court or judicial officer as required. United States v. Bright,* 541 F.2d 471, 474 (5th Cir. 1976), *cert. denied,* 430 U.S. 935, 97 S.Ct. 1560, 51 L.Ed.2d 780 (1977); *United States v. Logan,* 505 F.2d 35, 37 (5th Cir. 1974); *United States v. West,* 477 F.2d 1056, 1058 (4th Cir. 1973). The mere violation of a bond condition, other than failure to appear

as ordered, is not a criminal offense within the meaning of section 3150.

Not all breaches of bond conditions give rise to criminal liability under the statute. Only failures to appear as ordered constitute bail jumping, and that conduct is precisely what Congress intended to deter by making bail jumping a serious crime. *United States v. Bright,* 541 F.2d at 475. *Accord United States v. DePugh,* 434 F.2d 548, 552 (8th Cir. 1970) (statute fixes no criminal penalty for violation of bond conditions imposed under section 3146(a)), *cert. denied,* 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971); *United States ex rel. Brown v. Fogel,* 395 F.2d 291, 293 (4th Cir. 1968) (for breach of condition other than nonappearance, *court* may do all that is appropriate to orderly progress of trial and fair administration of justice). *See generally* H.R.Rep.No.1541, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Admin.News, pp. 2293, 2306.

Defendant was arrested, without a warrant, by DEA Agent Markonni for "bail jumping". This arrest, therefore, was lawful only if there was probable cause to believe defendant was "bail jumping". 21 U.S.C. § 878(3) (1976). *See generally United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Cadena,* 585 F.2d 1252, 1263 n. 25 (5th Cir. 1978).

■ Probable cause exists when the facts and circumstances within the arresting officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe an offense has been or is being committed. *Draper v. United States,* 358 U.S. at 313, 79 S.Ct. at 333; *United States v. Savage,* 564 F.2d 728, 732–33 (5th Cir. 1977); *United States v. Lowery,* 436 F.2d 1171, 1174 (5th Cir. 1970),

---

**10.** The government also argued that Agent Markonni's warrantless arrest was lawful under Ga.Code Ann. § 27–207. There is no merit to this contention.

The law of the state in which an arrest is made by a federal law enforcement officer determines the arrest's validity only where there is no applicable federal statute. *See generally*

*United States v. DiRe,* 332 U.S. 581, 589–90, 68 S.Ct. 222, 226, 92 L.Ed. 210 (1948). There is an applicable federal statute in the case *sub judice*: DEA agents are authorized to make warrantless arrests only as prescribed in 21 U.S.C. § 878(3) (1976).

**11.** Act of June 22, 1966, Pub.L.No.89–465, 80 Stat. 214.

*cert. denied,* 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 329 (1971). The question of probable cause often involves "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). However, we hold that a DEA agent has probable cause to effect a warrantless arrest under 21 U.S.C. § 878(3) for the criminal offense of "bail jumping", as proscribed by 18 U.S.C. § 3150, only when there is reason to believe that the defendant *had failed to appear before any court or judicial officer as required.* Mere suspicion that the defendant may fail to appear in the future, if and when ordered to do so, is insufficient. "To allow less would be to leave law-abiding citizens at the mercy of the officers' whim or caprice". *Brinegar v. United States,* 338 U.S. at 176, 69 S.Ct. at 1311.

■ Markonni's arrest of defendant for "bail jumping" was not based upon probable cause: Markonni had no knowledge of any required appearance defendant failed to make. The only facts within his personal knowledge were that defendant told him, in response to questions posed, that she was outside her bond restricted area without permission, that she was en route to Lexington, Kentucky, and that she was about to board an airplane for that destination.[12] If the warrantless arrest was not based upon probable cause to believe defendant had violated section 3150, it was unlawful.

## B. SECTION 3146—VIOLATION OF BOND CONDITION

The government's primary theory in support of defendant's warrantless arrest for "bail jumping" is that there was probable cause to arrest defendant under 18 U.S.C. § 3146(c), *or* 18 U.S.C. § 401(3), *or* a combination thereof. The government suggests that although Agent Markonni arrested defendant for "bail jumping", he was really arresting her for violating the travel restrictions imposed as a condition of her release pending appeal. We reject this contention.

■ A *court, not a DEA agent,* is empowered by 18 U.S.C. § 401(3) to punish disobedience or contempt of its order by fine or imprisonment.[13] This Court has

---

12. Agent Markonni knew in or shortly after March 1977 of the travel restrictions imposed upon defendant as a condition of her bond. *See* note 6 *supra.* All other facts which the government uses to make a showing of probable cause were elicited from defendant by Agent Markonni's interrogation prior to her arrest. Although not raised by the parties ir the district court or on appeal, a member of this Court's panel questioned, at oral argument, whether all defendant's statements to Markonni should be suppressed because of failure to give *Miranda* warnings. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). If Markonni's interrogation was found to have been conducted in a "custodial" atmosphere, *Miranda* warnings would have been required for defendant's incriminating statements to be admissible. *United States v. Carollo,* 507 F.2d 50 (5th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 105 (1975). In deciding whether the interrogation occurred in a custodial context we would consider four factors: whether probable cause to arrest had arisen; whether the subjective intent of the officer conducting the interrogation was to hold the defendant; whether the subjective belief of the defendant was that her freedom was significantly restricted; and whether the investigation had focused on the defendant at the time of the interrogation. *United States v. Warren,* 578 F.2d 1058, 1071 (5th Cir. 1978) (en banc). See also *United States v. Nash,* 563 F.2d 1166, 1168 (5th Cir. 1977).

Although this Court is empowered to raise this issue *sua sponte* and to exclude any consideration of defendant's responses to Agent Markonni under the "plain error" doctrine, we find it unnecessary to do so in light of our affirmance, on other grounds, of the district court's action. *See Silber v. United States,* 370 U.S. 717, 82 S.Ct. 1287, 8 L.Ed.2d 798 (1962); Fed.R.Crim.P. 52(b). *Accord Washington v. Davis,* 426 U.S. 229, 238 & n. 9, 96 S.Ct. 2040, 2046–47 & n. 9, 48 L.Ed.2d 597 (1976); *United States v. Buechler,* 557 F.2d 1002, 1007 n. 7 (3d Cir. 1977). *See generally United States v. Johnson,* 585 F.2d 119, 127 (5th Cir. 1978) (plain error where mistake is so basic and prejudicial that justice cannot have been done).

13. Section 401(3) provides:
   *A court of the United States* shall have power to punish by fine or imprisonment, *at its discretion,* such contempt of its authority, and none other, as—
   (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.
18 U.S.C. § 401(3) (1976) (emphasis added).

made it clear that *courts* are vested with the power to take appropriate actions for violations of a bond condition other than non-appearance.

> Where a condition of an appearance bond is violated *other than non-appearance before a court or judicial officer*, the court still has at its disposal the power to declare a forfeiture of the bond, *Brown v. United States*, 5 Cir. 1969, 410 F.2d 212 to revoke bail, *United States ex rel. Brown v. Fogel*, 4 Cir. 1968, 395 F.2d 291, 294, to issue a warrant of arrest, 18 U.S.C.A. § 3146(c), and in extreme cases, to declare the violator in contempt of court. *United States v. Penn*, 2 Crim.L.Rep. 3159 (D.C.Ct. of Gen.Sess.1968). The last is a sanction which "must be used sparingly, and only against deliberate or wilful contemptuous conduct toward the Court." *United States v. Penn, supra*, at 3141. But it is not unavailable. 18 U.S.C.A. § 1351 of the Bail Reform Act expressly reserves to the court its traditional powers to punish for contempt. As stated in that section: "Nothing in this chapter shall interfere with or prevent the exercise by any court of the United States of its power to punish for contempt." The presence of this section in the Bail Reform Act makes it unnecessary to attribute to § 3150 a broader enforcement power than its plain language permits. When an accused willfully violates a condition of release, he necessarily violates the court order containing these conditions. See 18 U.S.C.A. § 3146(c). If the circumstances of the violation are extreme enough, see *United States v. Green*, 1958, 356 U.S. 165, 78 S.Ct. 632, 2 L.Ed.2d 672, the violator's conduct is punishable under 18 U.S.C.A. § 401(3).

*United States v. Clark*, 412 F.2d 885, 890 (5th Cir. 1969) (emphasis in original, footnote omitted). DEA agents, therefore, have no implied arrest power under section 401.

The government's argument also raises the issue of whether violation of a bond condition is a criminal offense under 18 U.S.C. § 3146(c) such that a DEA agent can effect a warrantless arrest under 21 U.S.C. § 878(3). We hold that it is not.

Section 3146(c) provides:

> (c) A judicial officer authorizing the release of a person under this section shall issue an appropriate order containing a statement of the conditions imposed, if any, shall inform such person of the penalties applicable to violations of the conditions of his release and shall advise him that a warrant for his arrest will be issued immediately upon any such violation.

18 U.S.C. § 3146(c) (1976).

The sketchy legislative history of this provision indicates only that it relates to release orders; there is no mention or intimation that violation of a condition of bond gives rise to criminal liability under section 3146(c).[14]

The government contends that the mere violation of a bond condition is a criminal offense. In support of this position it cites *United States v. Avery*, 447 F.2d 978 (4th Cir. 1971) (per curiam), *cert. denied*, 405 U.S. 930, 92 S.Ct. 984, 30 L.Ed.2d 804 (1972).

In *Avery* the defendant was appealing his conviction for violation of bond terms. Avery had been released pursuant to the Bail Reform Act and ordered to remain in the Eastern District of Virginia. Subsequently, he traveled to Jamaica and was arrested on his return to Miami, Florida. He contended, on appeal, that his conviction was contrary to the law and evidence. The court, in a short, per curiam opinion prepared without the benefit of oral argument, disagreed. The court's discussion of the issue involved forty-one words:

> Finding no merit in Avery's contention that he possessed a round trip airplane ticket from the United States to Jamaica, we find substantial evidence to show a willful violation of bond terms and, consequently, the findings below will not be disturbed.

447 F.2d at 979. We find *Avery* contrary to the weight of authority, even in the Fourth

14. *See* H.R.Rep.No.1541, 89th Cong., 2d Sess., *reprinted in* [1966] U.S.Code Cong. & Admin. News, pp. 2293, 2300–301.

Circuit. See *United States v. Cardillo*, 473 F.2d 325 (4th Cir. 1973); *United States ex rel. Brown v. Fogel*, 395 F.2d 291 (4th Cir. 1968). *Cf. United States v. DePugh*, 434 F.2d 548, 552–53 (8th Cir. 1970) *cert. denied*, 401 U.S. 978, 91 S.Ct. 1208, 28 L.Ed.2d 328 (1971) (recognizing that Bail Reform Act fixes no penalty for violation of special conditions, such as restrictions with respect to travel, as authorized by section 3146(a)).

In *Cardillo* the defendant contended that since the courtroom clerk rather than the trial judge advised him of penalties for failure to appear, he could not be prosecuted for violating section 3150. The defendant relied upon the language in section 3146(c) which requires "[a] judicial officer authorizing the release of a person under this section . . . [to] inform such person of the penalties applicable to violations of the conditions of his release . . . ." 18 U.S.C. § 3146(c) (1976). Defendant contended that his motion for directed verdict of acquittal should have been granted because a courtroom clerk is not a "judicial officer".

In rejecting this contention, the court held that the required warning by a "judicial officer" under section 3146(c) is not a condition precedent to prosecution under section 3150. The court found the purpose of section 3146(c) to be deterrence: in order to enhance the deterrent value of criminal penalties, the defendant released on bond would be given notice of the penalties that might be imposed if he or she failed to appear in court as directed. 473 F.2d at 327.

In *United States ex rel. Brown v. Fogel*, 395 F.2d 291 (4th Cir. 1968), one issue confronting the court was whether the district court judge had abused his discretion in revoking bail. The court initially held that the Bail Reform Act was inapplicable because relator was charged with an offense under state, not federal, law. *See generally*, 18 U.S.C. § 3156(a)(2) (1976). Relator argued, alternatively, that the spirit of the Act should be used as a guide in determin-

ing whether the district court judge abused his discretion in revoking bail for violation of the condition of release (travel restrictions). The court also rejected this contention, saying that:

Violation of a condition of release constitutes contempt, and for contempt the Eighth and Fourteenth Amendments are the only limitation on the punishment which may be imposed, short of the Court's sound discretion. Surely, the Act's silence of a specific remedy to assure appearance after demonstrated breach of a condition of admission to bail under the Act indicates the extent of the Court's power under § 3151. The "spirit" of the Act is thus not to limit or to prescribe exclusive remedies for breach of a condition of release, other than appearance in appropriate cases. *For breach of condition other than appearance, the Court when proceeding under the Act or under the inherent power may do all that is appropriate to the orderly progress of the trial and the fair administration of justice.* Cf. *Fernandez v. United States*, 81 S.Ct. 642, 5 L.Ed.2d 683 (1961) (per Harlan, J., as Circuit Justice).

395 F.2d at 293 (emphasis added). As indicated above, this reasoning has been recognized by this Court. *United States v. Clark*, 412 F.2d 885, 890 (5th Cir. 1969).

▪▪ We hold, therefore, that the violation of a condition of bond imposed under 18 U.S.C. § 3146(a) is not a criminal offense under section 3146(c), but merely sets the judicial machinery in motion and empowers a court, not a DEA agent, to determine whether punitive action is warranted. See 18 U.S.C. §§ 401, 3151 (1976) (contempt, arrest, imprisonment); Fed.R.Crim.P. 46(e) (forfeiture of bond). Although the wording of section 3146(c) clearly contemplates that an arrest warrant will issue for violation of a bond condition, we find that in enacting this section Congress endorsed the *court's* inherent power to form appropriate relief. See *United States v. Stanley*, 449 F.Supp. 467 (N.D.Cal.1978).[15] Even though Special

---

**15.** In *Stanley* the defendant was released on bail pending appeal of his conviction. One

condition of his bond was that he not depart the district without court permission. The dis-

Agent Markonni had reason to believe defendant Williams was violating the conditions of her bond, he did not have probable cause to believe a *criminal offense* had been or was being committed since violation of a bond condition is not, ipso facto, a criminal offense. Consequently, Agent Markonni's warrantless arrest of defendant for "bail jumping" can not be justified as being based on probable cause under section 3146(c). The arrest, therefore, was unlawful. The fruits of the search conducted incident thereto were properly suppressed: the district court properly sustained defendant's motion to suppress with respect to the packet of heroin discovered in defendant's jacket pocket and which formed the basis for Count One of the indictment.[16]

## C. *FRUIT OF THE POISONOUS TREE*

Defendant asserted below that the heroin discovered in the second search—the search of defendant's luggage—should be suppressed as the "fruit of the poisonous tree". *Wong Sun v. United States,* 371 U.S. 471, 484–88, 83 S.Ct. 407, 415–17, 9 L.Ed.2d 441 (1963). The district court, in sustaining defendant's motion with respect to the second quantity of heroin seized, did not articulate its reasons for granting the motion. On appeal, however, the question we must examine is " 'whether, granting establishment of primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " 371 U.S. at 488, 83 S.Ct. at 417. To answer this question in the present context, we must determine whether the representations made by Agent Markonni in his affidavit for a search warrant support a finding of probable cause without any consideration given to those facts discovered as a result of the unlawful arrest and first unlawful search.[17]

trict court granted the government's ex parte motion to revoke bail upon a showing that defendant was outside the district without court permission. Defendant contended that revocation was improper because not authorized by any specific provision of the Bail Reform Act. In rejecting this argument and holding that the Bail Reform Act did not supplant remedies available pursuant to Fed.R.Crim.P. 46 and the inherent power of the court to enforce its own orders, the court said:

> [T]he language of the Bail Reform Act itself suggests that Congress recognized the continuing existence of inherent power to revoke bail and arrest a defendant. 18 U.S.C. § 3146(c) requires a judicial officer authorizing release on pretrial bail to inform the defendant that an arrest warrant will be issued immediately upon violation of any condition of release. *This section does not in itself authorize* bail revocation or *arrest. But it clearly contemplates that such action may be taken upon violation of a condition of release. Congress can only have had in mind the Court's inherent power, which is thus implicitly endorsed by § 3146(c).*

449 F.Supp. at 470 (emphasis added).

**16.** *See* note 8 *supra* and accompanying text.

**17.** This procedure was suggested by counsel at the suppression hearing below but was completely disregarded on appeal. Other courts have employed such a procedure. For example, the Court of Appeals for the District of Columbia has held that "[w]hen an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue." *James v. United States,* 135 U.S.App.D.C. 314, 315, 418 F.2d 1150, 1151 (1969) (Leventhal, J.). "If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted." *Id.,* 135 U.S.App.D.C. at 316, 418 F.2d at 1152. *Accord United States v. Marchand,* 564 F.2d 983, 993–94 (2d Cir. 1977) (Friendly, J.), *cert. denied,* 434 U.S. 1015, 98 S.Ct. 732, 54 L.Ed.2d 760 (1978); *United States v. Koonce,* 485 F.2d 374, 379–80 (8th Cir. 1973); *United States v. Sterling,* 369 F.2d 799, 802 (3d Cir. 1966); *Chin Kay v. United States,* 311 F.2d 317, 321–22 (9th Cir. 1962). This Court has held that where certain allegations in a search warrant affidavit are sufficient per se to establish probable cause, the court need not consider a defendant's attacks on the illegality or insufficiency of the other allegations in the affidavit. *United States v. Tarrant,* 460 F.2d 701, 703–704 (5th Cir. 1972). While the Supreme Court of the United States has not specifically had occasion to consider whether this procedure cures the "fruit of the poisonous tree" problem where a search warrant is issued on the basis of an affidavit setting forth information both lawfully and unlawfully obtained, at least four justices have recognized the vitality of such an ap-

In determining whether probable cause exists for the issuance of a search warrant it is necessary to determine whether the affiant, at the time of making the affidavit and the issuance of the warrant, had reasonable grounds to believe the offense charged was being or had been committed. *United States v. Del Valle*, 587 F.2d 699, 701 (5th Cir. 1979). Although proof of actual criminal activity is not required, *United States v. Tasto*, 586 F.2d 1068, 1069 (5th Cir. 1978), probable cause means something more than mere suspicion. *United States v. Gordon*, 580 F.2d 827, 832 (5th Cir. 1978). In the case *sub judice* the facts known to Agent Markonni at the time the affidavit was made give rise to nothing more than mere suspicion.

Disregarding those facts flowing from defendant's unlawful arrest and search incident thereto, the facts known to Agent Markonni and set forth in his affidavit, see note 7 *supra*, were: that Markonni previously had arrested defendant in Toledo, Ohio and found and seized 372.82 grams of heroin and 29.51 grams of cocaine; that defendant was *reputed* to be a drug courier for a large scale narcotics distribution organization in the Cincinnati, Ohio area; that subsequent to her arrest in Toledo, Ohio, *defendant's common-law husband*, also arrested at that time, *admitted* to Markonni that the heroin and cocaine seized had been furnished by a narcotics dealer in Los Angeles, California; that defendant was convicted upon a plea of guilty of possession of heroin with intent to distribute but was appealing this conviction; that Markonni observed defendant deplane from a non-stop Delta Airlines flight originating in Los Angeles, California, the source city of heroin in defendant's prior conviction; that Markonni interviewed defendant, during which he observed that defendant's airline ticket was for travel from Los Angeles, California to Lexington, Kentucky, via Atlanta; that Markonni knew all three cities were outside defendant's bond restricted area; that defendant, in response to Markonni's questioning, indicated that she was outside her bond restricted area without court permission, that this was the first time she had done so, and that she was traveling to Lexington, Kentucky because that was where she currently lived. Without more, these facts would make a reasonable person *suspicious* that criminal activity might be afoot. Additional known facts would be necessary for there to be a finding of probable cause. *See, e. g., United States v. Lewis*, 556 F.2d 385 (6th Cir. 1977), *cert. denied*, 434 U.S. 1011, 98 S.Ct. 722, 54 L.Ed.2d 754 (1978) (what DEA agent knew for purpose of probable cause was that defendant had taken short trip, lasting less than one day, to Los Angeles, a distant city, from which federally controlled narcotics had been illegally coming into Detroit; that defendant had used an alias when paying for his ticket, which indicated the likelihood of an illicit purpose in the trip; that defendant had taken with him to Los Angeles one suitcase that was virtually empty; that defendant had a prior arrest for possession of heroin and two non-drug related convictions; that defendant had left with American Airlines a telephone number to an apartment which was noticeably under surveillance for narcotics traffic; that defendant's personal residence was a place other than the apartment under surveillance for narcotics traffic, which supported the inference that the apartment under surveillance was a place used by defendant for narcotics traffic; and that defendant had returned to Detroit wearing the same clothes as when he had left).

Finding an absence of probable cause to issue the search warrant without the illegally obtained information considered, we conclude that the district court properly sustained defendant's motion to suppress all evidence seized by government authorities.[18]

AFFIRMED.

---

proach. *See United States v. Giordano*, 416 U.S. 505, 554–55, 94 S.Ct. 1820, 1845, 40 L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part, joined by Burger, C. J., and Blackmun & Rehnquist, JJ.).

18. The purpose underlying the exclusionary rule, deterrence of unlawful police activity, is promoted by our disposition of this appeal. In the future, government agents who have reason to suspect that an individual may be "jumping

**CHARLES CLARK, Circuit Judge, dissenting:**

This unique case carries the application of the exclusionary rule to an extreme that ignores its purpose and could harm the interests of justice. An officer who had previously arrested a narcotics runner, knew she had been convicted and knew she was free on a bond which provided limitations designed to stop her criminal activities, saw that criminal in a situation which obviously violated those bond limitations. As Judge Simpson's opinion demonstrates, the agent's arrest of this woman for "bail jumping" was legally wrong. If this were a suit for false arrest, I would have no difficulty in concurring in the majority's impeccable reasoning. But it is not such a trial. It is a criminal prosecution brought because a search pursuant to the invalid arrest established that the criminal was repeating her prior role as a heroin courier. Because the majority would deny to her trial this positive evidence of the plain truth without any prospect such denial would have a proper deterrent effect, I respectfully dissent.

The purpose of the exclusionary rule is to take away any temptation of law enforcement officials to knowingly violate the rights of citizens by denying to the public proof of criminal conduct disclosed by such wrongful police activity. *Stone v. Powell*, 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976); *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974). "[T]he application of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *United States v. Calandra, supra*, 414 U.S. at 348, 94 S.Ct. at 620. In order for the exclusionary rule to serve its deterrent purpose, the officer

must act in a way he either knew or should have known was wrongful. This is not such a case.

Officer Markonni did what any reasonable, practical officer would have considered the law required him to do. He did what reasonable, practical citizens would expect him to do. When he stopped and searched Williams he knew she had violated bond limitations designed to protect the public from future repetitions of her past criminal conduct. An officer in the field is to be judged by considerations of common sense. "These are not technical; they are the factual and practical considerations of everyday life on which everyday men, not legal technicians, act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949). While the bright light of post-incident litigation permits trained legal minds to agree that Officer Markonni made a mistake of law, such post hoc rationalization should not be the basis for judging his actions for purposes of applying the exclusionary rule.

No proper deterrent effect is accomplished by the suppression of the evidence in this case. Field officers are seldom trained as legal technicians. Even those who are may have mistakenly thought that Officer Markonni's arrest was proper. Since the officer whose future actions are to be affected will not realize his actions are wrongful when he is compelled to make a quick decision in an apparently valid arrest situation which complicated legal analysis may later establish to be invalid, we cannot expect him to be deterred. If today's ruling does serve as any sort of deterrent, it may have the deleterious effect of making the officer on the line overcautious

bail" should observe the suspect or arrange for other government authorities to do so. In the interim, the United States Attorney for the district in which the suspect is believed to be restricted may be contacted. The United States Attorney may then appear, ex parte, before a district court and request modification or revocation of the suspect's bond and issuance of an arrest warrant. So long as the suspect is granted a hearing immediately after

being brought into custody, this procedure satisfies due process requirements. *United States v. Bowdach*, 561 F.2d 1160, 1166 & n. 1 (5th Cir. 1977). This procedure, although more costly and time consuming than that followed in the instant case, is but a small price to pay to insure that law-abiding citizens are not at the mercy of an officer's whim or caprice. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949).

to act in a situation where proper and reasonable instinct tells him that the activity he observes is criminal. If he hesitates to act lest he later be criticized for denying to the process of justice evidence of crime, we have hindered, not furthered, the interests of justice. Unless an officer knows or should know his activities transgress the bounds of law, the evidence discovered by such activity ought not be suppressed. Everyday practical common sense is the standard by which officers' actions ought to be judged for exclusionary rule purposes. The stringent standard applied to Markonni's actions here is, I respectfully submit, plainly wrong. *United States v. Caceres*, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1979).

Furthermore, under the novel factual situation involving the difficult point of law presented here, application of the exclusionary rule should not be required until such time as repeated cases involving this technical legal mistake occur. *United States v. Wolffs*, 594 F.2d 77 (5th Cir. 1979).

### ON REHEARING

Before BROWN, Chief Judge, COLEMAN, GOLDBERG, AINSWORTH, GODBOLD, CLARK, RONEY, GEE, TJOFLAT, HILL, FAY, RUBIN, VANCE and KRAVITCH, Circuit Judges.

BY THE COURT:

A majority of the Judges in active service, on the Court's own motion, having determined to have this case reheard en banc,

IT IS ORDERED that this cause shall be reheard by the Court en banc on briefs without oral argument on a date hereafter to be fixed. The Clerk will specify a briefing schedule for the filing of supplemental briefs.