**Isaac L. JAMES, Jr., Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 21876.**

United States Court of Appeals
District of Columbia Circuit.

Argued May 5, 1969.

Decided June 20, 1969.

Mr. George A. Kramer, Washington, D. C. (appointed by this court) for appellant.

Mr. Daniel E. Toomey, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., at the time the brief was filed, and Frank Q. Nebeker, Asst. U. S. Atty., at the time the brief was filed, were on the brief, for appellee.

Before BURGER,* TAMM and LEVENTHAL, Circuit Judges.

LEVENTHAL, Circuit Judge:

We affirm the judgment sentencing appellant following his conviction for grand larceny and unauthorized use of a motor vehicle, notwithstanding his claim of constitutional violations.

* Circuit Judge Burger did not participate in the disposition of this case.

On July 28, 1967, on a complaint from a neighborhood resident, who said that several young men were engaged in mechanical work on a car parked in a public street, Private Hairston of the District police responded to 2402 21st Place, Northeast, Washington, D. C., and observed a Chevrolet and Pontiac parked in an alleyway. Several young men were clustered around the cars and two of them were "working" on the Chevrolet. Officer Hairston also saw a partially stripped down 1967 Pontiac parked in a garage situated at the end of the alley, although one of the youths pulled down the garage door when he spotted a police car approaching. Private Hairston questioned appellant about the Chevrolet and the repairs, asked him to produce a registration, and also inquired about the Pontiac in the garage. Appellant produced the ownership for the Chevrolet, and volunteered that he leased part of the garage, but said he had no knowledge as to who used the side occupied by the Pontiac and knew nothing about the car. Officer Hairston took down appellant's name and warned him that making repairs on a vehicle in a public street was illegal, but did not issue a summons.

 On August 1, Officer Hairston was again in the vicinity, and saw the garage door ajar. He was able to observe from outside that the 1967 Pontiac car, still sitting there, had been completely stripped. The hood and innards, the headlamps and wiring, and also the windshield wipers had been removed. Tools were strewn on the floor of the garage. The front license plate was also missing.[1]

Suspicion aroused, Officer Hairston entered the premises to investigate further. He checked the rear of the car and copied down the number on the rear license tag. A search revealed the owners manual on the floorboard. Upon returning to his patrol car Officer Hairston checked his list of missing vehicles and found that the car had been reported. A check was made at headquarters, and on August 2, a warrant issued based on Officer Hairston's observations on July 28, and August 1, and the information that the car had been reported stolen. A search was made and photographs taken of the premises.

1. The primary qeustion concerns appellant's Fourth Amendment rights. The District Court held on a pre-trial motion to suppress that the rear license plate and the owners manual would be excluded, as this material was obtained during an invalid entry into the garage, but that the items obtained after the issuance of the warrant would be admitted.

 When an affidavit in support of a search warrant contains information which is in part unlawfully obtained, the validity of a warrant and search depends on whether the untainted information, considered by itself, establishes probable cause for the warrant to issue. Wong

1. The affidavit in support of a warrant alleged that Private Hairston observed the front license tag missing when he arrived to investigate the street repairs on July 28, 1967. This fact was not brought out at the hearing on the motion to suppress; however, it is consistent with the allegation in the affidavit that Private Hairston entered the premises and obtained the license number from the back plate. We see no basis for discrediting the allegation.

Appellant contends that even those observations that preceded entry on the premises violated his Fourth Amendment rights. Private Hairston testified at the pre-trial hearing that the garage door was ajar and that he was able to look under and observe the parts and tools strewn about. The police are free to observe circumstances and evidence that are in "plain view" to the public. See United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927) ; Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L.Ed. 898 (1924). The plain view doctrine was reaffirmed in Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). That the policeman may have to crane his neck, or bend over, or squat, does not render the doctrine inapplicable, so long as what he saw would have been visible to any curious passerby. That Private Hairston subsequently entered before obtaining a warrant does not taint his pre-entry observations, see United States v. Lee, 274 U.S. at 563, 47 S.Ct. 746.

Sun v. United States,[2] in announcing the "fruit of the poisonous tree" doctrine, limited the exclusionary rule to evidence which the police could not trace to some "independent" and lawful source.[3] While the Supreme Court has not specifically had occasion to consider whether this doctrine is applicable to a search warrant that issues on the basis of an affidavit setting forth information both lawfully and unlawfully obtained, other circuits have applied the "independent source" test. If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted.[4]

■ We think on balance the District Judge did not err in concluding that Officer Hairston's observations, prior to his illegal entry, established probable cause for issuance of the warrant. The circumstances revealed a brand new car, stripped bare and with front license plate removed, sitting around for several days in an alley garage. The circumstances also included the hasty attempt to close the garage door when Officer Hairston first arrived on the scene on July 28.

This was not a situation where engine parts alone had been removed from a new vehicle, as if to "soup up" or tailor a standard model to personal taste. With removal of both innards and accessories, and the missing front license plate, a trained police officer would not have been unreasonable in believing that the car was stolen property.[5] Although the circumstances as such were consistent with an innocent explanation, that does not negative the existence of information strong enough to constitute probable cause for issuance of a warrant.[6]

■ 2. Appellant also claims the rule of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was violated when Officer Hairston was permitted to testify, over objection, as to his conversation with appellant on July 28. That contention must be rejected on the authority of Allen v. United States, 129 U.S.App.D.C. 61, 390 F.2d 476 (1968), Supp.Op., August 23, 1968, 131 U.S.App.D.C. 358, 404 F.2d 1335, a ruling to which we adhere. "The police talk to too many people in the course of a day to make warnings compulsory every time they inquire into a situation. Such a requirement would hamper and perhaps demean routine police investigation. Indeed excessive admonitions are likely to make cooperative and law-abiding citizens anxious and fearful out of proportion to the need for admonitions in advising prime suspects of their rights." 129 U.S.App.D.C. at 64, 390 F.2d at 479. Officer Hairston was engaged in an inquiry concerning a minor violation. The July 31 questions about the garage and the Pontiac were the product of curiosity or even suspicion, but were neither ad-

2. 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

3. 371 U.S. at 487–488, 83 S.Ct. 407. *Cf.* Murphy v. Waterfront Comm., 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964).

4. *See* United States v. Sterling, 369 F.2d 799, 802 (3d Cir. 1966) ; Chin Kay v. United States, 311 F.2d 317, 321 (9th Cir. 1962). While it is logically possible, by extending the deterrence rationale for the exclusionary rule, to argue as appellant does, that any taint in the police conduct nullified the entire investigatory process so that no warrant can issue, we think this extension goes beyond the sound limits of the deterrence philosophy. In our view the "independent source" doctrine of *Wong Sun* is reinforced by the approach underlying Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969), and supports the approach adopted by the Third and Ninth Circuits.

5. *See* Bell v. United States, 102 U.S.App.D.C. 383, 387, 254 F.2d 82, 86, cert. denied, 358 U.S. 885, 79 S.Ct. 126, 3 L.Ed.2d 113 (1958), where were noted that the probable cause standard is geared to the judgment of a "reasonable, cautious, and prudent police officer."

6. *See* United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ; Brinegar v. United States, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).

dressed to a person in custody or under restraint, nor were they asked in the course of an investigation, engaged in as a forerunner of an arrest. That Officer Hairston dropped the inquiry when appellant disavowed any knowledge about the car, belies the existence of the custodial or focused atmosphere that defines the *Miranda* rule.

Affirmed.