UNITED STATES of America,
Plaintiff,

v.

Marion E. McMILLON, Defendant.

Crim. No. 2141-70.

United States District Court,
District of Columbia.

Oct. 30, 1972.

Brian W. Shaughnessy, Washington, D. C., for the Government.

Nicholas A. Addams, Washington, D. C., for defendant.

## MEMORANDUM OPINION

RICHEY, District Judge.

On August 4, 1972, the defendant was arraigned before this Court and pleaded not guilty to three counts of a Grand Jury indictment charging her with unlawful possession of a narcotic drug under the District of Columbia Code, and certain other violations of the federal drug abuse laws. Subsequent to her arraignment the defendant, through her attorney, filed a Motion to Suppress as evidence against her all items mentioned in the counts of the indictment under which she was charged. On October 4 and October 5, 1972, this Court heard oral argument and testimony on the defendant's Motion. The Motion was based on several grounds, and the Court recognizes a need for special comment, as those grounds raise particularly difficult questions of fact and law.

### I. Contentions of the Defendant

The defendant contends that the search warrant authorizing the search of the defendant's premises was illegal because the facts and circumstances alleged in the affidavit in support of said warrant were obtained in a manner constituting an invasion of privacy of the inhabitants of the dwelling, thus violating the proscriptions of the Fourth Amendment. The defendant further contends that the search warrant improperly authorized a night time search,

and that it improperly authorized a search of the defendant's yard and premises, rather than a search of the yard only.

## II. *Facts and Circumstances*

The affidavit in support of the warrant alleges that Officer Finkelberg of the Narcotics Branch, Metropolitan Police Department, was informed by a reliable source that the occupants of 1655 34th Street, N. W., Washington, D. C. had plants growing which were suspected to be marijuana plants in flower pots in the back yard of the premises. Officer Finkelberg subsequently responded to the rear of the premises and took pictures of the suspected marijuana plants, which pictures were viewed by Officer Yates of the Narcotics Branch, who believed that the plants were indeed marijuana plants. Officer Yates made his own observations of the yard, and saw that some of the plants which had been setting on the ground, as shown in the photographs, were setting on the rear porch in flower pots and that several of the plants were missing altogether. He further observed one marijuana plant growing from the soil in the rear yard. Based on these and other observations made by Officer Yates, he alleged in the affidavit that he believed there was illicit marijuana being secreted inside the premises and that there was illicit marijuana being grown and cultivated in the yard at the rear of the premises. A search warrant was issued for the entire premises and the back yard, and the search conducted pursuant to the warrant resulted in the confiscation of the items listed in the indictment.

The defendant's main contention is that the manner in which the observations by Officers Finkelberg and Yates were made violated the defendant's right to privacy and as such constituted an unreasonable search under the Fourth Amendment. As shown in the photographic exhibits of the back yard and premises, the yard was enclosed by a stake fence approximately six feet in height and overgrown with vines and bushes. At the hearing, defendant adduced testimony from both of the officers in an effort to demonstrate that they had taken very active and positive steps to pierce the visual barrier of the high fence and vegetation to peer into the yard.

It is apparent from the testimony of the two officers that neither of them physically intruded onto the defendant's property during the course of the observations reported in Officer Yates' affidavit. The observations by both officers which are the main subject of this controversy were made from the porch of the premises adjacent to the defendant's dwelling, the testimony indicating that the officers were there at the invitation of the occupant of those premises. From this vantage point, Officer Finkelberg took the photographs which were later viewed by Officer Yates. It was also from this point that Officer Yates took a video tape of the plants which was exhibited during the course of the hearing, such tape having been made during the same observation by Officer Yates as that alleged in his affidavit. The porch on which the officers stood was separated from the defendant's porch by a wall or partition, and was slightly recessed from the defendant's porch. Officer Finkelberg testified that he could see and photograph the plants in the yard by standing on his toes, or perhaps by standing on a box, and looking over the fence separating the two yards. Officer Yates testified that in taking the video tape shot of the plants growing in defendant's yard, he stood on the adjacent porch and aimed the camera over the fence while holding the camera at eye level. He further testified that in taking the shots of the plants in the flower pots on the defendant's porch he had to "lean around the side of the partition" in order to take the picture. The video itself indicated that the lens of the camera stayed on the officer's side of the fence and that the pictures were not taken within defendant's premises.

### III. *Discussion*

#### A. *The Relevance of the Katz Decision*

■■ The physical conditions of the defendant's yard indicate that it was an area where she had a constitutionally protected reasonable expectation of privacy according to the rationale developed by the Supreme Court in Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967). Further, as stated in *Katz*, "the reach of [the Fourth] Amendment cannot turn upon the presence or absence of a physical intrusion into any given enclosure". 389 U.S. at 353, 88 S.Ct. at 512. Other cases have held that an individual's Fourth Amendment rights may be violated by a visual intrusion. See Brock v. United States, 223 F.2d 681 (C.A.5 1955). But despite the guidelines developed by the above-mentioned cases, the question in *this* case remains as to whether the officers' utilization of the adjacent property in the manner outlined above was so unusual or unreasonable as to conflict with the defendant's expectation of privacy. This Court does not feel that it was.

#### B. *The "Plain View" Doctrine*

It is well settled that observations of objects and activities falling within the plain view of an officer who has a right to be in the position to have that view are not searches within the meaning of the Fourth Amendment. United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L. Ed. 1202 (1927); Hester v. United States, 265 U.S. 57, 44 S.Ct. 445, 68 L. Ed. 898 (1924); Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067 (1968). The "plain view" doctrine is relevant to the circumstances in this case, for the officers testified that they could observe the alleged marijuana plants while standing on the porch of the adjacent premises.

■ There is no doubt that the officers had the right to stand on the porch, having been invited to do so by the occupant of the premises. Nor are the indications that some of the observations were made by the officers while stand-ing on their toes, or leaning around the side of the partition, or perhaps standing on a box on the porch sufficient to constitute their actions a search within the proscriptions of the Fourth Amendment. As stated by Judge Leventhal in James v. United States, 135 U.S.App.D. C. 314, 418 F.2d 1150, fn. 1 (1969):

"That the policeman may have to crane his neck, or bend over, or squat, does not render the doctrine inapplicable, so long as what he saw would have been visible to any curious passerby."

In *James*, observations by the police officer which were used to establish probable cause for the issuance of a search warrant were made through a garage door which was ajar. Similarly, in United States v. Wright, 146 U.S.App. D.C. 126, 449 F.2d 1355 (1971), cert. den., 405 U.S. 947, 92 S.Ct. 986, 30 L. Ed.2d 817 (1972), the Court of Appeals held, Judge Wright dissenting, that observation by an officer shining a flashlight through an eight or nine inch gap between garage doors was not a search.

This Court does not believe, as defendant argues, that the methods of observation employed by the officers in this case were any more positive or were any more an intrusion into the privacy of the defendant than were the actions of the police in the cases cited above. In light of the holdings in the *James* and *Wright* cases, therefore, the observations of Officers Finkelberg and Yates as alleged in the affidavit fall within the scope of the "plain view" doctrine.

#### C. *Reasonableness of the Officers' Actions*

■ In *Wright, supra*, the Court of Appeals found that Fourth Amendment search and seizure questions should turn upon a concept of reasonableness under the circumstances. Since there is "no formula for the determination of reasonableness" the facts and circumstances of each case must be carefully examined. Go-Bart Importing Co. v. United States,

282 U.S. 344, 357, 51 S.Ct. 153, 75 L.Ed. 374 (1931). Careful examination of the facts and circumstances of this case lead to the conclusion that the actions of the police were well within reason. This is not an instance where the police conducted a search and seizure without having first obtained an appropriate warrant. Acting pursuant to information obtained from a reliable source, the officers obtained permission to make their own observations from the porch of the adjacent premises. At no time during the course of those observations did the officers physically intrude onto the defendant's yard or premises. Based on their observations, the officers went through proper channels to secure a search warrant for defendant's yard and premises. This course of events could hardly be construed as unreasonable conduct in the performance of police duties, and indeed indicates a good-faith effort by the police to comply with the requirements of the law.

### D. *The Search and Seizure Were Lawfully Conducted Pursuant to a Valid Search Warrant*

■ The defendant argues that the search under the warrant issued in this case was improper because it was conducted at night, and that under Rule 41(a) of the Federal Rules of Criminal Procedure such night time searches are justified only when the affidavits in support of the warrant are positive that the property is in the place to be searched. The search warrant was issued on August 12, 1970. Prior to October 27, 1970, search warrants for federal narcotics violations could be executed at any time of day or night in view of the express provision of 18 U.S.C. § 1405 that a search warrant could be served in narcotics cases at any time of day or night if the United States Commissioner issuing the warrant was satisfied that there was probable cause to believe that grounds for the application existed. Therefore, the defendant's argument is without merit.

■ Nor is there merit to defendant's contention that the warrant authorized a search in excess of the scope warranted by the affidavit, that is, that the affidavit could support a search of the yard but not of the premises. The affidavit specifically states that Officer Yates, trained in the field of narcotics, viewed the photographs taken by Officer Finkelberg and was of the firm belief that the plants depicted in the photographs were marijuana plants. Upon his personal observation of the yard and the premises, Officer Yates noticed one alleged marijuana plant growing in the yard. He also noticed that the plants growing in flower pots in the yard as depicted in the photographs had been removed to the rear of the porch, and that several of the plants were missing altogether. The Court finds that this set of circumstances as alleged in the affidavit were reasonable and logical grounds for the belief that illicit marijuana was being secreted inside the premises. As such, there was probable cause for the issuance of the warrant to search both the yard and the premises.

### IV. *Conclusion*

This Court would never consciously disregard the constitutional rights of any criminal defendant and has made every effort in this case to insure that the Fourth Amendment rights of this defendant have not been abrogated by the police in the performance of their duties. However, the facts and circumstances of this case indicate to the Court that the defendant's rights have been adequately safeguarded. Consequently, the defendant's Motion to Suppress will be denied.