# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT NASHVILLE

AUGUST 1997 SESSION



**FILED**

**February 5, 1998**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | |
| | ) | |
| Appellee, | ) | C.C.A. No. 01C01-9610-CC-00431 |
| | ) | |
| vs. | ) | |
| | ) | Dickson County |
| **STEPHEN J. UDZINSKI and** | ) | |
| **DONNA STOKES a/k/a** | ) | |
| **DONNA STORY,** | ) | Honorable Robert E. Burch, Judge |
| | ) | |
| Appellants. | ) | (Certified Question of Law) |
| | ) | |

FOR THE APPELLANT:

DALE QUILLEN
MICHAEL J. FLANAGAN
Attorneys at Law
95 White Bridge Rd., Ste. 208
Nashville, TN 37205

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General & Reporter

DARYL J. BRAND
Assistant Attorney General
Criminal Justice Division
450 James Robertson Parkway
Nashville, TN 37243-0493

DAN M. ALSOBROOKS
District Attorney General

ROBERT WILSON
Assistant District Attorney General
P.O. Box 580
Charlotte, TN 37036

OPINION FILED: _____

**AFFIRMED**

CURWOOD WITT
JUDGE

## OPINION

The defendants, Stephen J. Udzinski and Donna Stokes a/k/a Donna Story, present a certified question of law following Udzinski's conditional guilty plea to a Class E felony of possession of marijuana for resale and Stokes's guilty plea to a Class A misdemeanor for possession of marijuana. Udzinski entered judicial diversion, and Stokes received a conviction and a suspended sentence of eleven months and twenty-nine days. Both defendants attempted to reserve the right to pursue a certified question of law of whether the search warrant under which Udzinski's house was searched was supported by probable cause. In this appeal, the defendants present that question, and the state raises the issue of whether the defendants have properly preserved the question for our review. For the reasons explained below, we affirm the judgment of the trial court on the suppression issue raised by the defendants' certified question.

In 1991, a search warrant was issued for a house owned by Udzinski. Upon execution of the warrant, contraband was discovered. Udzinski was thereafter charged with possession of a schedule VI drug for resale and possession of drug paraphernalia. He successfully challenged the validity of the search warrant in the trial court, and the state's appeal to this court was unsuccessful. State v. Stephen Udzinski, Jr., No. 01C01-9212-CC-00380 (Tenn. Crim. App., Nashville, Nov. 18, 1993). According to the state's position in that proceeding, the suppression of the evidence had the practical effect of requiring dismissal of the charges against Udzinski, Stephen Udzinski, Jr., slip op. at 2, although the record in the instant matter does not reflect the ultimate outcome of the prior proceeding.

Thereafter on January 30, 1996, a detective of the Dickson County Sheriff's Department applied to Dickson County Circuit Court Judge Robert Burch for a search warrant of the defendants' home. The detective's affidavit claimed

2

there was probable cause to believe there was marijuana in the house and on the persons of Udzinski and Stokes, and that the defendants possessed the marijuana with the intent to commit a crime. In his affidavit used to apply for the search warrant, the detective avowed in pertinent part

> Affiant further says that an informant . . . has told Affiant that within the last ten days said informant has been on the premises above described and observed **MARIJUANA** which was being possessed in violation of the law.
>
> Affiant further states that such informant is a Criminal Informant by the name of Crystal Griffin who has provided the above information to this Affiant against her penal interest. On 1-20-96, Detective Mike Holman, Dickson Sheriff's Department[,] observed Crystal Griffin and Jamie Neblett meet with a Confidential Informant who was working for Affiant. Confidential Informant was wired and Detective Holman heard conversation between Crystal Griffin and Confidential Informant wherein Crystal Griffin agreed to sell Confidential Informant marijuana. Crystal Griffin stated that she would have to travel to Charlotte, Tennessee to pick up the marijuana. This information was radioed to Affiant who followed Crystal Griffin and Jamie Neblett to the above-described residence and observed both enter into the residence. Affiant observed that the two stayed for approximately ten minutes. They left and were followed by Affiant and Detective Holman. Detective Holman observed Crystal Griffin and Confidential Informant meet and heard the conversation regarding the sale of marijuana between Crystal Griffin and Confidential Informant. Detective Holman recovered the marijuana from the Confidential Informant. This information was relayed to Affiant by Detective Holman. Crystal Griffin was interviewed by Affiant and Crystal Griffin admitted to Affiant that she sold marijuana to the Confidential Informant on 1-20-96 and that she had gone to the residence of Donna Stokes and Stephen Udzinski on that date and that Donna Stokes sold her one ounce of marijuana. She stated that Stephen Udzinski was present during the transaction. She further stated that she observed more marijuana, other than what she purchased, in the above-stated residence. She stated that she has purchased marijuana from Donna Stokes and Stephen Udzinski several times in the past. *Further, Affiant would state that on 9-12-91, a search warrant was executed on the residence of Stephen Udzinski and marijuana was recovered. Affiant obtained this information from the District Attorney's files and the executed search warrant.* A check with 911 records indicated that the above address is the address of Stephen Udzinski.

(bold in original) (italics added).

In the proceedings below, the defendants challenged the inclusion of the information italicized above pertaining to the results of the 1991 illegal search

warrant. See Murray v. United States, 487 U.S. 533, 108 S. Ct. 2529 (1988); Wong

Sun v. United States, 371 U.S. 471, 485, 83 S. Ct. 407, 416 (1963); State v. Clark,

844 S.W.2d 597 (Tenn. 1992). Following a hearing on the matter, the trial court

upheld the 1996 search warrant, finding probable cause for its issuance with the

offensive reference redacted. Thereafter, Stokes pleaded guilty to a Class A

misdemeanor for possession under Tennessee Code Annotated section 39-17-418,

received a probated sentence, and the court on the same date entered an order that

referenced Udzinski's conditional plea to possession for resale, a Class E felony,

placing Udzinski on judicial diversion pursuant to Tennessee Code Annotated

section 40-35-313(a)(1). In Stokes's judgment and the diversion order for Udzinski,

the court's action is described as being subject to rule 37(b)(i),[1] "reserving the right

to appeal [a] certified question of law which is dispositive of the case." The question

as framed in these documents is: "Whether or not the affidavit in support of the

search warrant establishes probable cause."

As a prerequisite to considering the issue of the search warrant's

validity on its merits, we must consider the state's allegation the defendants have

not properly certified their question to this court. Our supreme court has recently

addressed the proper procedure for preserving a question of law under Rule of

Criminal Procedure 37(b)(2). In State v. Pendergrass, 937 S.W.2d 834 (Tenn.

1996), the court reiterated its admonitions from State v. Preston, 759 S.W.2d 647

(Tenn. 1988):

> Regardless of what has appeared in prior petitions, orders, colloquy
> in open court and otherwise, the final order or judgment from which
> the time begins to run to pursue a T.R.A.P. 3 appeal *must contain a
> statement of the dispositive certified question of law reserved* by the
> defendant for appellate review and the question of law must be *stated
> so as to clearly identify the scope and the limits of the legal issue
> reserved*. For example, where questions of law involve the validity of

---

[1] The trial court necessarily intended to refer to rule 37(b)(2), paragraph (i) or (iv). See Tenn. R. Crim. P. 37(b)(2)(i), (iv).

searches and the admissibility of statements and confessions, etc., the reasons relied upon by the defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise. Without an explicit statement of the certified question, neither the defendant, the State nor the trial judge can make a meaningful determination of whether the issue sought to be reviewed is dispositive of the case. Most of the reported and unreported cases seeking the limited appellate review pursuant to Tenn.R.Crim.P. 37 have been dismissed because the certified question was not dispositive. Also, the order must state that the certified question was expressly reserved as part of the plea agreement, that the State and the trial judge consented to the reservation and that the State and the trial judge are of the opinion that the question is dispositive of the case. Of course, the burden is on defendant to see that these prerequisites are in the final order and that the record brought to the appellate courts contains all of the proceedings below that bear upon whether the certified question of law is dispositive and the merits of the question certified. No issue beyond the scope of the certified question will be considered.

Pendergrass, 937 S.W.2d at 836-37 (quoting Preston, 759 S.W.2d at 650) (emphasis added in Pendergrass).

The state claims the Stokes judgment and Udzinski order insufficiently identify the reasons relied on by the defendants in the trial court and passed on by the trial court, do not state the certified question was "expressly reserved as part of a plea agreement," do not recite that the state consented to the reservation, and do not recite that the state agrees the question is dispositive of the case.

The judgment against Stokes and the order placing Udzinski on judicial diversion recite, "This plea was entered pursuant to Rule[s] 11 and 37(b)(i) reserving [the] right to appeal certified question of law which is dispositive of the case. The certified question is as follows: Whether or not the affidavit in support of the search warrant established probable cause." Both documents have been signed by the judge, defense attorney and assistant district attorney general. While the question could have been more artfully drafted to include the very precise nature

of the defendants' challenge to the warrant, to wit, the inclusion of the language referring to the 1991 search and the existence of probable cause in its absence, we find the question adequate under relevant supreme court precedent. See Pendergrass, 937 S.W.2d 834; Preston, 759 S.W.2d 647; cf. State v. Danny Ray Dorris, No. 01C01-9606-CR-00242 (Tenn. Crim. App., Nashville, May 21, 1997) (in factually similar case, this court reviewed question of similar degree of specificity without comment on its compliance with requirements of Pendergrass or Preston), pet. for perm. app. filed (Tenn. July 21, 1997); State v. Harris 919 S.W.2d 619 (Tenn. Crim. App. 1995) (certified question of similar specificity sufficient under Preston). But cf. Harris, 919 S.W.2d at 625-26 (Hayes, J., dissenting) (question of similar specificity should not be found sufficient under Preston where record contained neither arguments at suppression hearing nor a specific statement of the grounds asserted by defendant in his motions to suppress). We do not interpret the supreme court's requirements so narrowly as to require trial courts and practitioners to follow a verbatim format in certifying questions to the appellate courts.[2]

### I. Appellate Jurisdiction Over Udzinski's Case (Minority Position).

The author of this opinion disagrees with his colleagues in their view that this court has jurisdiction over Udzinski's appeal. This section, in which Judges Riley and Walker do not concur, sets forth the minority position that a Tennessee

---

[2]    As a second preliminary inquiry, this court is required to determine whether the "dispositive question" presented is, in fact, dispositive. Preston, 759 S.W.2d at 651 (opinion on petition to rehear). Only if the record clearly demonstrates the dispositive nature of the question may we proceed to its merits. Preston, 759 S.W.2d at 651. In the case at bar, we find the question presented actually dispositive of the issue as to both defendants and the crimes to which they offered their pleas, based upon the indictment charging an offense was committed on January 30, 1996. In actuality, the state had apparent access to witnesses (the informant and Crystal Griffin, the person who purchased drugs from the defendants before selling the same to the informant) whose testimony could have established the defendants' guilt of the same offenses on January 20, 1996. However, the illegal possession on that date is beyond the scope of the indictment as it existed on the date the pleas were made.

Rule of Appellate Procedure 37(b) appeal is not available under Tennessee Rule of Appellate Procedure 3(b) in a case that is being judicially diverted under Tennessee Code Annotated section 40-35-313.

Defendant Udzinski offered a conditional plea under Code section 40-35-313, requesting judicial diversion of his case. Under this diversion procedure, an eligible defendant-applicant is found guilty or offers a plea of guilty, and "the court may, without entering a judgment of guilty and with the consent of the [defendant] . . . defer further proceedings and place the person on probation upon such reasonable conditions as it may require . . ." Tenn. Code Ann. § 40-35-313(a)(1)(A) (1997) (emphasis added). If the candidate for judicial diversion successfully completes his probation regimen, then upon expiration of the probationary period the court dismisses the case "without adjudication of guilt." Tenn. Code Ann. § 40-35-313(a)(2) (1997) (emphasis added). This process, "commonly" referred to as judicial diversion, see State v. Talmadge G. Wilbanks, No. 02C01-9601-CR-00003, slip op. at 5-6 (Tenn. Crim. App., Jackson, Nov. 19, 1996), perm. app. denied (Tenn. 1997), differs from section 40-15-105 pretrial diversion. In addition to being a determination that is initially made by the trial court and not the prosecutor, judicial diversion is requested "after pleas of guilty or verdicts of guilty." State v. George, 830 S.W.2d 79, 80 (Tenn. Crim. App. 1992). Under Tennessee Code Annotated section 40-35-313(a)(2), when judicial diversion is granted, a conviction may later be entered if the defendant fails to fulfill his

probation obligations.

Rule 37(b) provides that "a[n] appeal lies from any order or judgment in a criminal proceeding where the law provides for such appeal, and from any judgment of conviction . . . [u]pon a plea of guilty or nolo contendere" if the other

**7**

provisions for certification of a dispositive question of law are met under rule 37(b)(2)(i) or (iv), the applicable scenarios of certified questions in the case now before us. Tenn. R. Crim. P. 37(b) (emphasis added). The rule defines an "appeal" as a "[d]irect appellate review <u>as a matter of right</u>." Tenn. R. Crim. P. 37(a) (emphasis added). Thus, in order for a defendant to claim the benefits of a certified question under 37(b), the order or judgment from which the appeal is sought must be appealable "as a matter of right."

Rule 3(b), (c), Tennessee Rules of Appellate Procedure, governs the right to appeal in a criminal case and works in tandem with rule 37(b) of the Tennessee Rules of Criminal Procedure. Rule 3(b) provides as a general provision that "an appeal as of right by a defendant lies from any <u>judgment of conviction</u> entered by a trial court." Tenn. R. App. P. 3(b). Upon the entry of a judgment of conviction,[3] an appeal as a matter of right may be made after a guilty plea if (1) a dispositive certified question of law was reserved with the consent of the state and the trial court, (2) the defendant "seeks review of the sentence and there was no plea agreement concerning the sentence," or (3) the issues sought to be appealed were not, as a matter of law, waived by the submission of the guilty plea. Tenn. R. App. P. 3(b). These three opportunities for rightful appeals after a guilty plea is submitted are predicated upon the plea being consummated into a judgment of conviction. Tenn. R. App. P. 3(b). Rule 37(b) mentions additional provisions for appeals as a matter of right, emanating from "any orders or judgment . . . where the law provides" for such an appeal, and such special appeal provisions are given in Tennessee Rule of Appellate Procedure 3(b), (c). That is to say, in addition to the general provision for an appeal as a matter of right that is predicated upon the entry of a conviction, the defendant "may <u>also</u> appeal as of right from an <u>order denying</u>

---

[3]    "A judgment of conviction shall set forth the plea, the verdict or findings, and the adjudication and sentence." Tenn. R. Crim. P. 32(e).

**8**

or revoking probation, " as well as from other orders or judgments of criminal contempt, habeas corpus, extradition, or post-conviction proceedings. Tenn. R. App. P. 3(b) (emphasis added). With respect to orders dealing with probation, rule 3(c) extends to the state a corresponding right to appeal as a matter of right from an "order or judgment . . . granting or refusing to revoke probation . . . ." Id. at 3(c) (emphasis added).

The Criminal Sentencing Reform Act of 1989, of which section 40-35-313 is a part, affords appellate review as of right from some, but not all, judicial diversion decisions. Any proper analysis must begin with a conceptual reckoning. "Judicial diversion" is an appellation supplied by the courts, probably to distinguish it from section 40-15-105 pretrial diversion, and the phrase is not used in the governing statute, section 40-35-313. The statute is presented as a "probation" statute. Tenn. Code Ann. § 40-35-313 (1997) (bearing the caption, "Probation--Conditions--Discharge--Expungement from official records"). See Talmadge G. Wilbanks, slip op. at 5-6 (commenting that Code section 40-35-313, although "commonly known as judicial diversion, is officially . . . probation with expungement from official records" and noting that the section is inserted in the Code "immediately after the provisions dealing with other forms of probation"). Section 40-35-313 speaks of the deferral of the prosecution, utilizing "probation" during the deferral period.

Therefore, in a case in which judicial diversion--and hence "probation" -- is granted, the issue is whether the decision, unsupported by a prior conviction judgment, is an "order denying" or "granting" probation as mentioned in rule 3(b), (c), such that an appeal as a matter of right attaches.[4] Applying certain maxims of

_____

[4] As if further perplexity is needed, "Probation" is defined as "the release by a court of a person found guilty of a crime, upon verdict or plea,

**9**

statutory construction to the comparison of section 40-35-313 with Tennessee Rule of Appellate Procedure 3(b), (c), the legislature, when it enacted the Criminal Sentencing Reform Act in 1989, is presumed to have had knowledge of rule 3(b), (c), in light of its resolution pursuant to Tennessee Code Annotated section 16-3-404 approving the Tennessee Rules of Appellate Procedure which were effective July 1, 1979. Neff v. Cherokee Ins. Co., 704 S.W.2d 1, 4 (Tenn. 1986). Also, a court attributes to words and phrases used in statutes their ordinary and natural meaning, "without forced or subtle construction that would limit or extend the meaning of the language." Carson Creek Vacation Resorts, Inc. v. State, 865 S.W.2d 1, 2 (1993). As such, the term "probation" as used in section 40-35-313 must be understood to be the equivalent of the same term as it appears in rule 3(b), (c), with the result that, regardless of the absence of a conviction judgment, an appeal as a matter of right is available to a defendant who has been denied probation, including judicial diversion, and to the state when probation, including judicial diversion, has been granted.[5]

---

without imprisonment subject to conditions imposed by the court and subject to the supervision of the probation service." Tenn. Code Ann. § 40-28-102(7) (1997) (emphasis added). Being "found guilty . . . upon a verdict or plea" is not the equivalent of being subject to a "judgment of conviction," as that phrase is defined in rule 32(e), Tennessee Rules of Criminal Procedure. See n. 3, supra; see State v. Vasser, 870 S.W.2d 543, 546-47 (Tenn. Crim. App. 1993) (discussing the permutations under which even being "convicted" may not mean being subject to a "judgment of conviction").

[5]     This rationale perhaps supports the numerous judicial diversion rule 3 cases from this court in which the jurisdictional basis was not articulated. See State v. Gilberto U. Cantu and John P. Scott, No. 02C01-9603-CR-00092 (Tenn. Crim. App., Jackson, May 30, 1997); State v. Bobby Gene Keck, No. 01C01-9401-CC-00017 (Tenn. Crim. App., Nashville, May 16, 1997), pet. for perm. app. filed (Tenn. July 14, 1997); State v. Michael W. Moore, No. 02C01-9607-CR-00206 (Tenn. Crim. App., Jackson, Jan. 29, 1997); Talmadge G. Wilbanks; State v. Michael Gentry, No. 01C01-9510-CC-00336 (Tenn. Crim. App., Nashville, Nov. 8, 1996), perm. app. denied (Tenn.), cert. denied, --- U.S. ---, 118 S. Ct. 567 (1997); State v. Bingham, 910 S.W.2d 448 (Tenn. Crim. App. 1995); State v. Beverly, 894 S.W.2d 292 (Tenn. Crim. App. 1994); State v. Dowdy, 894 S.W.2d 301 (Tenn. Crim. App. 1994) (cases wherein this court afforded review upon the defendant's appeal of denial of judicial diversion, following a guilty plea);see also State v. Antonio Johnson, 01C01-9601-CC-00014 (Tenn. Crim. App., Nashville, Dec. 13, 1996); State v. Parker, 932 S.W.2d

To analyze the availability of a rule 37(b) appeal in a section 40-35-313 case, one must not confuse the appeal of the diversion decision itself[6] with the appeal of issues that arose prior to the judicial diversion decision. An appeal of Udzinski's pre-diversion issues of search warrant deficiencies entails a review of the determination of guilt and cannot sensibly be undertaken within the limited parameters of review of the "order denying . . . [or] granting . . . probation." Thus, appellate review of the determination of guilt fits within the general provision of rule 3(b) that avails to the defendant an appeal as a matter of right only when a conviction judgment is entered. As noted, the trial court followed section 40-35-313(a) and entered no judgment of conviction nor any order that was dispositive of the case. In such a case, the lack of a conviction judgment deprives Udzinski the right to an appeal of his prediversion issues.

Defendant Udzinski cannot be understood to be appealing the diversion decision itself. He sought judicial diversion, has made no complaints about the terms of the order, and has attacked only the court's prior ruling on the suppression issues. However, even an attempt to "piggy-back" the rule 37(b) appeal onto the appeal of the diversion, or probation, decision fails because

_____

945 (Tenn. Crim. App. 1996); State v. David Paul Martin, No. 03C01-9412-CR-00448 (Tenn. Crim. App., Knoxville, Oct. 13, 1995),aff'd on other grounds, 950 S.W.2d 20 (Tenn. 1997); State v. Glenn David Jones, No. 03C01-9302-CR-00057 (Tenn. Crim. App., Knoxville, Nov. 22, 1994), perm. app. denied (Tenn. 1995); State v. Vasser, 870 S.W.2d 543 (Tenn. Crim. App. 1993); State v. Billy Moss, No. 02C01-9206-CC-00134 (Tenn. Crim. App., Jackson, Aug. 18, 1993), perm. app. denied (Tenn. 1994) (cases in which the defendant appealed the denial of judicial diversion after a trial). In State v. George, 830 S.W.2d 79 (Tenn. Crim. App. 1992), we specifically held that the defendant is not relegated to the pursuit of a discretionary appeal under rule 9 or 10 of the Tennessee Rules of Appellate Procedure when seeking review of the trial court's denial of judicial diversion, and he or she may proceed under rule 3(b). George, 830 S.W.2d at 80. Also, we have afforded review when the state has appealed from the trial court's grant of judicial diversion. See State v. Karl J. Saulsberry, No. 02C01-9203-CR-00058 (Tenn. Crim. App., Jackson, June 10, 1993).

[6]    See n. 5, supra.

probation was granted -- not denied. Tenn. R. App. P. 3(b). The defendant, having not been denied probation, and having received no conviction judgment, has no rightful appeal of the diversion decision.

Under Tennessee Rule of Criminal Procedure 37, Udzinski has no basis for appealing a certified question of law because he has no appeal as a matter of right under Tennessee Rule of Appellate Procedure 3(b), (c).

I am authorized and pleased to express the concern of Judges Riley and Walker that a defendant should have the right to appeal pretrial or trial issues after judicial diversion, especially when the diversion is granted after a trial was held.[7] However, I believe it is imperative to recognize that the trial court may not impose judicial diversion except upon the defendant's consent. Tenn. Code Ann. § 40-35-313(a) (1997). A defendant who prefers to present issues for appellate review may eschew the diversion, receive the conviction, and pursue a rightful appeal under rule 3(b). Furthermore, if judicial diversion is desired and accepted, the defendant may still apply for a discretionary appeal under Tennessee Rules of

---

[7] If judicial diversion probation requirements are not fulfilled, the court may then enter an "adjudication of guilt and proceed as otherwise provided." Tenn. Code Ann. § 40-35-313(a)(2). Conceivably, the thirty-day period for filing a motion for new trial, Tenn. R. Crim. P. 33(b), and the subsequent period for perfecting an appeal, Tenn. R. App. P. 4(a), are then available to the defendant who is aggrieved by errors allegedly committed before or during his trial, affording the defendant appellate review after he or she violates the terms of probation. However, section 40-35-313(a)(2) authorizes the trial court, "[u]pon violation of . . . probation," to "enter an adjudication of guilt." Problematically, such an adjudication is a component of, but is less than, a "judgment of conviction" as defined in rule 32(e), Tenn. R. Crim. P. Under rule 32(e), the judgment of conviction includes the "adjudication and sentence." Tenn. R. Crim. P. 32(e) (emphasis added). One wonders, therefore, if section 40-35-313(a)(2) contemplates that sentencing occurred when judicial diversion was granted, not to be repeated when the adjudication of guilt is made. This construction of the statute is all the more troublesome in view of rule 33(b), Tenn. R. Crim. P., which states that a motion for new trial must be made "within thirty days of the date the order of sentence is entered." Tenn. R. Crim. P. 33(e) (emphasis added).

Appellate Procedure 9 or 10.

In consequence of the above analysis, I would have found this court to be without jurisdiction to hear Udzinski's rule 3 appeal. That conclusion not prevailing with a majority of the members of this panel, we now consider the issues raised by the parties on appeal.

## II. Legality of the Search Warrant.

The issue presented by the defendants is whether the affidavit upon which the search warrant was issued sufficiently states probable cause. In reviewing the issue, we must uphold the trial court's denial of the defendants' motion to suppress unless the evidence preponderates against the lower court's findings. State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996).

The defendants maintain the affidavit is fatally tainted because it refers to the results of the illegal 1991 search. The state concedes this information was improperly included in the affidavit. According to the defendants, the egregiousness of this error, the effect of which is to deprive the process of a "neutral and detached magistrate" to make the probable cause determination, compels suppression of the evidence, without further inquiry to determine whether probable cause exists with the offensive information redacted. The state, on the other hand, urges us to affirm the trial court's finding of probable cause with the offensive information redacted from the affidavit.

As a general principle, the exclusionary rule bars the admissibility of both direct and indirect evidence obtained pursuant to an unconstitutional search and seizure. See Wong Sun, 371 U.S. at 485, 83 S. Ct. at 416. There are numerous exceptions. One is the "independent source" rule, whereby evidence

**13**

obtained following illegal police conduct is not subject to the exclusionary rule if it would have been discovered through means independent of the unconstitutional police action. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392, 40 S. Ct. 182, 183 (1920). The independent source rule has been applied by the Supreme Court to a situation in which police officers illegally entered a warehouse, saw contraband in plain view, and then immediately applied for a warrant to search the premises, albeit without informing the magistrate of the recent illegal search. Murray, 487 U.S. 533, 108 S. Ct. 2529.

The case before us presents a variation of that concept. Here the search warrant affidavit contained both legally obtained information (observations made by an individual who had recently been in the defendants' home and a transaction between this individual and one or both of the defendants), as well as tainted information (the results of the illegal 1991 search).

The defendants would have us hold that Murray, 487 U.S. 533, 108 S. Ct. 2529 and Clark, 844 S.W.2d 597, require exclusion of the evidence as a blanket remedy where an affidavit in support of a search warrant application improperly informs the magistrate of the results of an illegal search. The defendants argue this result is compelled based upon the immeasurable effect the tainted information will have on the magistrate's ability to perform his functions as a "neutral and detached" arbiter. We do not interpret these authorities as mandating the result defendants seek as a matter of law.

In Murray, the Supreme Court was faced with a situation in which police officers conducted an illegal entry of a warehouse, discovered marijuana in plain view, and based upon other facts, obtained a search warrant within hours. Murray, 487 U.S. at 535-36, 108 S. Ct. at 2532. The Murray defendants sought

**14**

exclusion of the "plain view" evidence which was thereafter seized pursuant to the valid warrant, arguing such a policy was necessary to prevent governmental authorities from circumventing the warrant clause by conducting illegal searches and then returning with a warrant in the event the first search turned up contraband or other evidence of a crime. Murray, 487 U.S. at 539, 108 S. Ct. at 2534. A fractured Supreme Court[8] applied the independent source doctrine, noting the officials' decision to obtain a warrant was not based upon what they saw during the illegal entry and the illegally obtained information was not presented to the magistrate who issued the warrant. Murray, 487 U.S. at 542-43; 108 S. Ct. at 2536.

The Tennessee Supreme Court faced a similar set of facts in Clark, 844 S.W.2d 597. There detectives illegally entered the defendant's home, observed suspected evidence of criminal activity in plain view, secured the home and obtained a search warrant. Clark, 844 S.W.2d at 598-99. Unlike the officers in Murray, the Clark officers relied on statements the defendant's son made during the illegal entry in the affidavit accompanying their application for a search warrant. Clark, 844 S.W.2d at 600. The Clark court interpreted Murray as requiring "(1) the evidence be later discovered during a search pursuant to a valid warrant, (2) this valid warrant [be] obtained without reference to evidence uncovered during the illegal search, and (3) [that] the government agents would have obtained the warrant even had they not made the illegal entry." Clark, 844 S.W.2d at 600. On the facts of Clark, the warrant failed because the illegally obtained information was presented to the magistrate, and as a result the evidence obtained from the search pursuant to the warrant was suppressed. Clark, 844 S.W.2d 597.

_____

[8]Murray was a 4-3 decision, with two justices not participating.

**15**

In <u>Murray</u>, the court reemphasized the basis of the independent source doctrine:

> [T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a *worse*, position that they would have been in if no police error or misconduct had occurred. . . . When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation.

<u>Murray</u>, 487 U.S. at 537, 108 S. Ct. at 2533 (quoting <u>Nix v. Williams</u>, 467 U.S. 431, 443, 104 S. Ct. 2501, 2509 (1984)) (emphasis in original). The evil the <u>Murray</u> court sought to avoid was illegal searches and seizures via governmental intrusion into private areas, possibly as an exploratory tool for determining whether the intruding officer should bother obtaining a warrant. On the other hand, in the case before us, the evil the defendants attack is not a pre-warrant governmental intrusion into private areas but the officer's inclusion of tainted information in the search warrant affidavit and its ultimate effect on the magistrate's ability to remain neutral and detached.

In this case, the illegal search was conducted approximately five years prior to the criminal activity alleged in the 1996 search warrant affidavit.[9] Presumably, the contraband seized in 1991 was not returned to Udzinski, his victory on the illegality of that search notwithstanding. Thus, unlike <u>Murray</u> and <u>Clark</u>, the tainted information clearly refers to earlier, separate criminal activity by Udzinski, as well as different contraband, though both the 1991 alleged criminal activity and contraband are coincidentally of a similar nature as that alleged in the 1996 affidavit. It is clear to us that the informant's activities in 1996 were an independent

---

[9] The defendants do not argue, and it is beyond reason, that the illegal 1991 search was conducted as a predicate for the 1996 search. It bears repeating that the 1991 search was not a warrantless intrusion; rather, it was conducted pursuant to a search warrant that was subsequently invalidated. <u>Stephen Udzinski, Jr.</u>, slip op. at 2-3.

**16**

source of information from the prior tainted search. The objective of the informant's operation in 1996 was apparently to purchase contraband from Crystal Griffin. It was Ms. Griffin who elected to travel to the defendants' residence to purchase the drugs for resale to the informant.

Having determined that the affidavit included source material independent of the information that came from the 1991 search and seizure, we must determine (1) if the inclusion of the 1991 information irrevocably invalidated the 1996 warrant and, if not, (2) whether the independent information contained in the affidavit supports the issuance of the warrant.

**(1)**

As to the first issue, which the defendant frames as compromising the neutral and detached function of the magistrate, we are unpersuaded that a fatal compromise occurred such that a redaction of the affidavit would not be remedial. Indeed, the defendants have been unable to support this argument with any authoritative caselaw. A trial court routinely makes determinations on legal issues when it is aware of, but unable to consider, information which might inculpate the accused, and such is often the very nature of a suppression hearing.

That said, we believe that redaction of the affidavit is supported on either of two bases.

**(a)**

Under <u>Murray</u>, we recognize that the result in cases where the magistrate has been informed of tainted information remains a question which is still

**17**

being debated.  One commentator has noted that <u>Murray</u> seemingly supports two significant conclusions:

> (1) that an independent source could not be established a la <u>James[</u> <u>v. United States</u>, 418 F.2d 1150 (D.C. Cir. 1969)],[10] merely by showing that tainted information was nonessential in a legal sense (that is, merely because the other information in the affidavit *could* alone have supported a probable cause finding); and (2) that an inquiry into the thought processes of the magistrate who issued the warrant would be appropriate on the independent source issues.

5 Wayne R. LaFave, Search and Seizure § 11.4(f) at 291 (3d ed. 1996) (emphasis in original).  However, that commentator cautions that <u>Murray</u> was a four justice opinion, it never discusses and rejects the <u>James</u> approach of considering the affidavit without the offending information, and its expression of these principles is not essential to its holding.  As such, these notions from <u>Murray</u> have not translated into practice.  Rather, courts continue to follow the <u>James</u> approach post-<u>Murray</u>. LaFave, <u>supra</u>, § 11.4(f) at 291-92.

Under a <u>Murray</u> analysis, we elect to follow the well-accepted practice of redacting the offensive references and determining whether probable cause exists, rather than employing a true subjective inquiry to determine what the magistrate actually relied on at the time he issued the warrant.[11]  <u>See, e.g.</u>, <u>United States v. Samaeizadeh</u>, 80 F.3d 1131 (6th Cir. 1996); <u>United States v. Campbell</u>, 878 F.2d 170 (6th Cir. 1989).  <u>See generally</u> 5 Wayne R. LaFave, Search and Seizure § 11.4(f) (3d ed. 1996).  This court has essentially followed this procedure in prior decisions. <u>See</u> <u>State v. Bowling</u>, 867 S.W.2d 338, 342-43 (Tenn. Crim. App. 1993); <u>State v. Carpenter</u>, 773 S.W.2d 1, 6  (Tenn. Crim. App. 1989).

---

[10]<u>James</u> said in pertinent part, "If the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant, apart from the tainted information, the evidence seized pursuant to the warrant is admitted."  <u>James</u>, 418 F.2d at 1152 (citations omitted).

[11]This procedure was accepted even before the <u>Murray</u> decision.  <u>See,</u> <u>e.g.</u>, <u>United States v. Karo</u>,  468 U.S. 705, 719, 104 S. Ct. 3296, 3305 (1984); <u>United States v. Korman</u>, 614 F.2d 541, 547 (6th Cir. 1980).

**(b)**

The second basis is not rooted in <u>Murray</u> and may be more appropriate in the present case. As noted above, the independent source doctrine is that "while the government should not profit from its illegal activity, neither should it be placed in a worse position than it would otherwise have occupied," <u>Clark</u>, 844 S.W.2d at 600 (quoting <u>Murray</u>, 487 U.S. at 542, 108 S. Ct. at 2535), but in <u>Clark</u>, unlike the case at bar, the evil to be avoided was an illegal governmental intrusion into one's home as a precursor to obtaining a warrant. In the present case, the pre-warrant entry is too remote and its effect too attenuated to the issuance of the contested warrant. As such, we find this case more analogous to those situations in which an officer includes deliberate or recklessly false information in a search warrant affidavit. <u>See, e.g.</u>, <u>State v. Little</u>, 560 S.W.2d 403 (Tenn. 1978); <u>State v. Meeks</u>, 867 S.W.2d 361 (Tenn. Crim. App. 1993). In those cases, the rule is that a warrant will be invalidated if (1) it contains a false statement made with the intent to deceive the issuing magistrate, or if (2) it contains a recklessly made statement which is essential to the establishment of probable cause. <u>Little</u>, 560 S.W.2d at 407. In this case, there is admittedly no false statement; however, we find the affidavit contained recklessly made statements.

The officer who drafted the 1996 affidavit obtained the information regarding the results of the prior search warrant from the district attorney general's office. Though it appears a different assistant district attorney general was likely assigned to the 1996 investigation of Udzinski than was assigned in 1991, the invalidation of the 1991 warrant was pertinent information which should have been maintained with any records of the 1991 proceedings and passed along to the officer. Whether the officer, who does not appear to have known of the invalidation of the prior search, was himself reckless is irrelevant. A state actor, or a combination of actors, has engaged in conduct which amounts to a reckless

**19**

disregard of facts represented in a search warrant affidavit.

As such, the question becomes whether the offensive information was essential to the establishment of probable cause.[12] If it was, the warrant must be invalidated. If it was not, the warrant may stand. See Little, 560 S.W.2d at 407. We now assess the existence of probable cause independent of the tainted information.

**(2)**

If probable cause is supplied by affidavit to a magistrate where the informant is from the criminal element, application of the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969) is mandated. State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993). Under the Aguilar-Spinelli standard, the affidavit's adequacy is measured by a two-pronged probable cause test: (1) whether the tip contains the basis of the informant's knowledge (the "basis of knowledge prong"), and (2) whether the tip includes a factual allegation that the informant is credible or the information is reliable (the "veracity prong"). State v. Jacumin, 778 S.W.2d 430, 432 (Tenn. 1989).

Review of probable cause determinations are inherently a fact-intensive process and must be determined on a case-by-case basis. State v. Ernest B. Steele, Jr., No. 03C01-9212-CR-00430, slip op. at 3 (Tenn. Crim. App., Knoxville,

---

[12] See State v. Marcus Ellis, No. 01C01-9001-CR-00021, slip op. at 6-7 n.1 (Tenn. Crim. App., Nashville, Dec. 12, 1990). (If illegally obtained information is included in an affidavit used to apply for a search warrant, the warrant is not invalid as a matter of law; rather, the offensive material would be excised from the affidavit, and it would be considered on its remaining contents).

Aug. 25, 1993) (citation omitted). The issuing magistrate's determination is generally entitled to great deference. See Jacumin, 778 S.W.2d at 432. Moreover, we reiterate that the trial court's determination on a motion to suppress must be upheld unless the evidence preponderates to the contrary. Odom, 923 S.W.2d at 23.

With those principles in mind, we have carefully reviewed the affidavit with the offensive references to the 1991 search redacted. We conclude that the evidence does not preponderate against the trial court's finding of probable cause. Moreover, we find no merit in the defendants' additional argument the information contained in the affidavit was stale. See State v. Thomas, 818 S.W.2d 350, 357 (Tenn. Crim. App. 1991) (ten day delay in obtaining warrant where criminal activity was ongoing). As such, this issue is without merit.

In summary, the defendants properly preserved their certified question for appellate review and this court exercises jurisdiction to hear both appeals, even though a minority view has been expressed that we have no jurisdiction to hear a rule 3 appeal in Mr. Udzinski's case. The certified question issue, however, is substantively without merit. Accordingly, the judgment of the trial court is affirmed.

_____
CURWOOD WITT, JUDGE

CONCUR:


_____
JOE G. RILEY JR., JUDGE

_____
JOSEPH H. WALKER, III, SPECIAL  JUDGE